137 So.2d 21 (1962)
Amos Honor MILLER, Appellant,
v.
STATE of Florida, Appellee.
No. 2525.
District Court of Appeal of Florida. Second District.
January 31, 1962.
John J. Duffy, Clearwater, for appellant.
*22 Richard W. Ervin, Atty. Gen., and Robert R. Crittenden, Asst. Atty. Gen., for appellee.
ALLEN, Judge.
This appeal seeks review of a judgment of conviction for possession of lottery tickets or shares in violation of the state's gambling laws and a one year prison term, plus $2,000 fine.
On January 28, 1961, defendant-appellant was involved in an automobile accident in Clearwater. The investigating police officer found him unconscious and saw in defendant's open glove compartment a large amount of money and adding machine tapes bundled together with paper clips and rubber bands. The officer had these taken into custody and defendant was hospitalized.
Defendant's car was towed to a garage and impounded. The investigating officer then went to the hospital and placed defendant under arrest for making an improper turn. Said arrest is not germane to this appeal since it was not a valid arrest without a warrant under § 901.15, F.S.A. Roberts v. Dean, 1939, 133 Fla. 47, 136 Fla. 421, 187 So. 571; Malone v. Howell, 1939, 140 Fla. 693, 192 So. 224. Later, said investigating officer and his superior went to the garage where the car was impounded and upon looking inside of it noticed something protruding from a torn place in the floor mat. The mat was lifted up and another bundle of adding machine tapes rolled around lottery tickets was found. No search warrant had been issued for this purpose, nor was this search made as an incident to a valid arrest.
Defendant was informed against for aiding and assisting in the conduct of a lottery and with illegal possession of lottery tickets. He was tried and found guilty of the possession charge. The lottery tickets were admitted into evidence over defendant's objection. It is questionable whether conviction would have resulted without the lottery tickets having been admitted into evidence. The question raised by this appeal is: was the aforedescribed search for and seizure of the lottery tickets a reasonable search and seizure so as to justify their admission into evidence?
The general rule concerning vehicular searches made without a warrant and not as part of a valid arrest is to the effect that such a search will be deemed reasonable if the searching officer, prior to making the search, had probable cause to believe that the contents of the automobile offended against the law. Section 933.19, F.S.A., adopting as the statute law of Florida the decision by the United States Supreme Court in Carroll v. United States, 1925, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790.
In the Carroll case, federal prohibition agents were engaged in a patrol along a highway for the purpose of stopping automobiles and seizing illicit liquor being transported in them. The defendants' automobile was stopped and searched without a search warrant. The search revealed illicit liquor which was seized and later introduced in evidence at the trial in which the defendants were convicted of violating the National Prohibition Act. The Court held that the search and seizure were reasonable and evidence seized admissible because the agents had probable cause to believe that the automobile in question was carrying contraband goods. Probable cause for this belief was found to exist because of facts made known to the agents two months beforehand convincing them that the defendants were bootleggers. The rationale of the decision is partially disclosed by the following statement in the opinion of the Court written by Mr. Chief Justice Taft:
"We have made a somewhat extended reference to these statutes to show that the guaranty of freedom from unreasonable searches and seizures by the Fourth Amendment has been construed, practically since the *23 beginning of the government, as recognizing a necessary difference between a search of a store, dwelling house, or other structure in respect of which a proper official warrant readily may be obtained and a search of a ship, motor boat, wagon, or automobile for contraband goods, where it is not practicable to secure a warrant, because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." (Emphasis supplied.)
The aftermath of the Carroll case in Florida has been what one court opinion and one text writer have called a trend to narrow the concept of immunity against searches and seizures involving automobiles. Cameron v. State, Fla.App. 1959, 112 So.2d 864; 29 Fla.Jur., Search and Seizure, § 12. Cameron v. State is cited for the proposition that less compelling facts and circumstances than were formerly required are accepted as constituting "probable cause" for a search of a vehicle and seizure of contraband found therein without a supporting warrant. A reading of the Cameron case discloses, however, that the defendants therein did not rightfully possess the automobile searched, having misappropriated it from the lawful owner in Wisconsin. Thus, the Cameron case comes under the rule that immunity against unlawful searches and seizures is not available to one in wrongful possession of the property searched. Alexander v. State, Fla. App. 1958, 107 So.2d 261; 47 Am.Jur., Searches and Seizures, § 11. In addition, there are many other detailed evidentiary factors relating to "probable cause" which distinguish Cameron from the instant case.
In Collins v. State, Fla. 1953, 65 So.2d 61, the evidence on which a bolita conviction was based had been uncovered by a search and seizure without a warrant of defendants' automobile as an incident to an arrest which the Court held to be an invalid arrest. The Court then narrowed the question facing it to whether the facts justified the search without either a warrant or a legal arrest. The circumstances relied on by the state to show that the officer had probable cause to believe that the searched vehicle contained contraband were that said officer had information that one of the defendants, whom he had been investigating for a month, was involved in the bolita racket and had gambling paraphernalia in his car. The Court held that the probable cause requirement was not met.
Before doing so, however, the Court adopted the rule that where it is impossible or impracticable to secure a search warrant, the officer making the search and seizure must be prepared to convince the Court that the information he possessed was sufficient basis for the issuance of a warrant had he applied for one. The Court went on to conclude that the grounds relied on to justify the search in the case before it would have been insufficient to prompt a magistrate to issue a warrant had application for same been made.
The Collins case was followed in Byrd v. State, Fla. 1955, 80 So.2d 694, which held that a tip that a truck was carrying moonshine whiskey did not amount to "probable cause" justifying a search and seizure without a warrant. The Court saw fit to quote the following portion of the opinion in the Collins case, supra:
"`Putting together the decisions of the Supreme Court of the United States and the decisions of this court, which we think are harmonious, we reach the conclusion that it is safer procedure to secure a search warrant preliminary to stopping a motorist and searching his car; that if halting, searching and seizing are accomplished without such a warrant the officer must be prepared to show that he had "probable cause" for his acts or "reasonable belief" or "trustworthy information" that the car was engaged in the transportation of contraband.'"
*24 In the case of Kraemer v. State, Fla. 1952, 60 So.2d 615, a conviction for a possession violation of the lottery laws was reversed on the basis of an illegal search and seizure. The searching officers had received an anonymous phone call that two cars habitually met at a given place under suspicious circumstances. The officers waited near the locale described to them and observed two cars approach and meet from opposite directions. Before the officers could reach the scene, the two cars drove off, again in opposite directions and evaded apprehension. One of the officers later saw what he thought was one of the cars at the observed meeting. He "took a chance" that it was one of the cars he had intended to apprehend and followed, stopped and searched it, uncovering the evidence which helped to convict the Kraemers. In holding that no probable cause existed to justify the officer in stopping the car and making a search, the Court noted at p. 617:
"* * * Even law enforcement officers should not be allowed to invade constitutional rights upon nothing more than suspicion, although ultimately justified; nor should suspicion be substituted for known facts which alone can form a lawful basis for probable cause. * * *" (Emphasis supplied.)
In the case of Gaskins v. State, Fla. 1956, 89 So.2d 867, a search and seizure without a warrant resulted in a conviction of a violation of the lottery laws which was affirmed. In that case, the officers searched the defendant's unattended truck after finding it parked at a darkened intersection, in the nighttime, without lights, its left wheels over on the pavement, with its windows open. The search which recovered the incriminating evidence was upheld as reasonable, the Court holding that the officers were performing a duty incident to their responsibilities as police officers when they investigated a vehicle under such circumstances. By "such circumstances" the Court apparently meant such suspicious circumstances. The Court did not as such deal with the question of "probable cause" and distinguished the case from Collins v. State, supra, apparently because the vehicle in Gaskins was unattended. The Court further stated 89 So.2d at p. 869:
"We are not here confronted with the stopping of a motor vehicle on the public highways on a pretext of a traffic violation but with an actual preconceived intent to search for contraband. Collins v. State, Fla. 1953, 65 So.2d 61. * * *"
It is not readily apparent for which of the above quoted two distinguishable fact situations the Court in Gaskins cites the Collins case. The Collins case, however, appears to have dealt with both of these two fact situations. The Court in Collins first disposed of that part of the case before it which involved the stopping of a motor vehicle on a pretext of a traffic violation. It concluded that the defendants were not committing a traffic violation and thus the arrest for same was invalid. This is evidenced by the Court's language appearing at 65 So.2d 64 as follows:
"Having concluded that there was no valid arrest, we approach the last phase of the question, that is, the justification by the facts of a search without either a warrant, or a legal arrest."
From this point on the Collins opinion appears to have dealt squarely with "an actual preconceived intent to search for contraband" and the "probable cause" necessary to justify such a search.
We do not deem the ruling in the Gaskins case, supra, to be controlling in the instant case. The fact that our vehicle was not stopped and searched on the pretext of a traffic violation does not seem sufficient in law to remove it from under the pronouncements in the Collins, Byrd and Kraemer cases; that police officers must have probable cause to justify a search. The instant case is only similar to Gaskins in that the vehicle was not *25 stopped while in motion and then searched and was not in the physical possession of the defendant when searched. It is to be distinguished from Gaskins in that the reasons for the vehicle being on the road were known to the investigating officer  it had just been in an accident. It had not been left unattended in a darkened street so as to cause one to suspect that a crime was in progress as the Court in Gaskins seems to infer was the situation confronting the officers in that case.
In Gispert v. State, Fla.App. 1960, 118 So.2d 596, this Court upheld convictions for breaking and entering and grand larceny. Police officers at a late hour on a rainy night had stopped an automobile going 65 to 70 miles per hour in a 55-mile-per-hour zone. Before the officers had an opportunity to alight from their cruiser, the defendants got out of their car and came back to the police car. One officer went up to the defendants' car and shone his flashlight therein and saw various property, later determined to have been burgled whereupon both officers proceeded to further search the car and seize additional contraband. This court held that under the circumstances the officers had good grounds to believe that a felony had been or was being committed, and had sufficient and probable cause to justify the search of the automobile and seizure of the evidence found therein. The challenged search was not made on the heels of an arrest nor was it made with a warrant.
The instant case is also distinguishable from Gispert. The articles observed by the officer in that case when he beamed his flashlight were readily enough consistent with innocence as was the money bound in adding machine tapes observed in plain view in defendant's car by the officer in the instant case. However, the circumstances surrounding the observations in the two cases are variant. The observation in Gispert was made simultaneous with an apprehension under circumstances which this court found would lead a reasonably prudent man to conclude that there was good ground to believe that the law was being violated. Those circumstances no doubt were the apparent reluctance on the part of the defendants in Gispert to have the officers see their car up close which reluctance was demonstrated by their rapid approach to the police cruiser. No such circumstances consistent with an inference of guilt surround the observation of the money in the instant case. The officer came upon defendant Miller's car after an accident had occurred. He did not know Miller and thus had no reason to suspect him of anything. The mere fact of the accident is consistent solely with innocence at least in so far as the possession of contraband is concerned. The following testimony discloses how the officer's suspicions were aroused.
"Q What was there about the markings there that you say aroused your suspicion? * * *.
"A Well, Sir, the manner in which the money appeared to be bundled up with paper clips and rubber bands and these tapes on the top of each bundle.
"Q What was the significance about the tape or markings on it?
"A Well, Sir, I have been to two of the schools at the Police Department concerning numbers and bolita. I thought that is what it was."
The suspicion disclosed by this testimony does not appear to coincide with the "probable cause" requirement as enunciated in the Collins case and other cases in harmony therewith decided by our Supreme Court. Admittedly the question of mere suspicion as opposed to probable cause involves a determination as to the state of a man's mind. But when constitutional safeguards are involved, if a doubt exists as to whether the officer was reasonable in concluding that a search was justified, such a doubt must be resolved in favor of the defendant whose property was searched. Certainly such a doubt is present in this case.
*26 Even if there are present in our law any vestiges of a relaxed rule to be applied in vehicular search cases, such a rule is inapplicable to the facts of the instant case. Here the car was impounded by the police when the search and seizure at issue took place. This coupled with the fact that the car was a total wreck renders it a remote likelihood that the evidence could have been spirited away before a warrant could be secured. It would not appear to be prejudicial to efficient law enforcement to say that the officers should have procured a warrant in this case. Neither is it necessary to say whether the facts in this case would have justified the issuance of a warrant had one been applied for.
The state has attempted to justify the instant search on one further ground. The testimony of the investigating officer discloses that he raised the floor mat of the car not only to seek evidence of a lottery violation but also because it was his duty incidental to his responsibilities as a policeman to safeguard anything of value that might be in the car. The duty of a policeman to protect valuables is then represented to this court as analogous to the duty of a policeman to search an unattended truck discovered at night at a darkened intersection as was held in Gaskins v. State, supra, to justify an immediate search without a warrant. We have already noted that the Gaskins case is distinguishable in one particular from the instant case. In Gaskins, as stated supra, the duty to search was no doubt grounded on the suspicious circumstances under which the truck was found. The Court therein stated, in elaborating on the duty to search incidental to the responsibilities of a police officer, that the search made "* * * was necessarily a component part of a complete investigation of the situation." That situation of course was a vehicle found intact but unattended at a darkened intersection. A search beneath the floor mat, however, is not necessarily a component part of a complete investigation of a motor vehicle accident or, for that matter, of the investigating officer's duty to protect the owner's valuables. Furthermore, in the instant case the vehicle was not searched until it was safely impounded. It had not been discovered under suspicious circumstances such as would be consistent with an inference of guilt. The officer first saw it after it had been involved in an accident. Except for the money observed in the open glove compartment, there was nothing about the car's presence on the road to raise a suspicion that a felony was in progress. The finding of money or objects, in plain sight in a vehicle, that are more consistent with an inference of innocence than guilt under circumstances solely consistent with innocence  a motor vehicle accident  does not appear to amount to the requisite probable cause to believe that the vehicle contains contraband as enunciated by prior harmonious decisions of our Supreme Court.
With no more to go on than money bundled with adding machine tapes found in plain sight in a wrecked automobile, a search beneath the floor mat of that automobile takes on the nature of unwarranted prying for which Florida's Declaration of Rights, § 22, F.S.A. and the Fourth Amendment to the United States Constitution were drawn to prohibit. It would appear that the officer satisfactorily performed his duty to protect the owner's property by securing valuables found in plain sight and by impounding the automobile. Under the facts of this case, when the officer dug beneath the floor mat, he committed an unreasonable search and seizure. Admission of the fruits of that search into evidence in this case was error.
The conviction appealed from is reversed and remanded for a new trial.
Reversed.
SHANNON, C.J., and SMITH, J., concur.