212 So.2d 337 (1968)
Paul N. GAGNON, Appellant,
v.
The STATE of Florida, Appellee.
No. 67-951.
District Court of Appeal of Florida. Third District.
June 25, 1968.
Rehearing Denied July 31, 1968.
*338 Mosca & Barone, Miami, for appellant.
Earl Faircloth, Atty. Gen., and Jesse J. McCrary, Jr., Asst. Atty. Gen., for appellee.
Before CHARLES CARROLL, C.J., and PEARSON and HENDRY, JJ.
PEARSON, Judge.
The appellant, Paul N. Gagnon, was convicted, after a jury trial in the criminal court of record, of (1) forgery, (2) uttering a forged instrument, and (3) petit larceny by unlawfully using a credit card. Appellant's principal point is that the trial court erroneously denied his motion to suppress evidence which two police officers removed from the automobile appellant was driving after they had arrested him for committing two traffic violations. The officers found the evidence while they were taking an inventory of the contents of the automobile. The appellant urges that the taking of the inventory was an unreasonable search.
We begin by declaring that the inventory was a search. It is well established that a minor traffic violation cannot be used as a pretext to stop a vehicle and search it for evidence of violation of other laws. Byrd v. State, Fla. 1955, 80 So.2d 694; Riddlehoover v. State, Fla.App. 1967, 198 So.2d 651. In the present instance we are called upon to review a finding by the trial judge that Gagnon's arrest was legitimate and not a pretext for a search and therefore the search was not unreasonable. We must determine whether the record supports this finding. The only witnesses who testified at the hearing on the motion to suppress were the two police officers. Their chronicle follows.
An arresting officer first observed appellant's automobile parked in front of a house which the two arresting officers had under surveillance. The officers later saw the automobile in traffic and followed it. They observed the driver of the automobile commit two traffic violations and signalled him to the side of the road. The driver, Gagnon, parked the automobile and locked it. While issuing citations for the violations, the officers recognized the appellant as a person for whom a bench warrant for previous traffic violations had been issued. One of the officers recognized the appellant as a man he had previously arrested for receiving and concealing stolen property. The officers did not know who was driving the automobile they were following until after they had stopped it. The police officers asked the appellant about the ownership of the automobile. He replied that he had borrowed the automobile; but he did not identify the lender. Gagnon was not able to produce any proof of ownership of the automobile. One officer knew that the appellant was not staying at the address he gave as that of his residence. This accumulation of circumstances caused the officers to arrest the appellant and place him in a patrol car. They radioed for a wrecker to take the automobile into police custody because the appellant had no indicia of ownership. Before the police wrecker arrived, the officers made an inventory of the contents of the automobile. They testified that the making of such an inventory is routine police procedure when an automobile is being taken into custody. The inventory led to the discovery of a brown *339 paper sack containing credit cards used in the commission of the crimes of which the appellant stands convicted.
The testimony of the officers is susceptible of only one interpretation, namely, that the arrest was lawful. The reasonableness of a search incident to a lawful arrest is a question for determination by the trial court. Loften v. State, Fla.App. 1965, 173 So.2d 157. We hold that the testimony in the record is sufficient to support the trial judge's finding that the evidence discovered was not the product of an unreasonable search.
Appellant's second point is directed to a ruling of the trial court which permitted proof of a separate offense not charged in the information. We find the evidence was admissible under the rules laid down in Williams v. State, Fla. 1959, 110 So.2d 654.
Appellant's third point is directed to the trial court's failure to grant his motion for a mistrial when a State witness referred to certain pictures used for identification of the appellant as "mug shots." See Jones v. State, Fla.App. 1967, 194 So.2d 24. We find from the record that the objectionable remark was made by the witness on cross examination when he was pressed by appellant's attorney to restate an answer.[1]
In Jones, supra, we held that reference to the photograph of a defendant as a "mug shot" implied that the defendant had a police record and that such reference was therefore highly prejudicial. In the present instance the record demonstrates that if error was committed, the appellant's attorney stimulated and suggested the error. It is established that an appellant may not take advantage of an error which he has himself induced. Cf. Borst v. Gale, 99 Fla. 376, 126 So. 290 (1930). In addition, the trial judge immediately ordered the answer stricken and instructed the jury to disregard it. The trial judge in the Jones case did not follow such a procedure. The motion for mistrial was made only after appellant had moved for and secured the order striking the answer and the instruction to the jury. We therefore conclude that reversible error has not been shown under this point.
Affirmed.
NOTES
[1] "Q At that time did you present some photographs to Mr. Sanders?

A I did.
Q How many photographs if you know did you show him?
A Eight.
Q You are positive there weren't 25 or 30?
A No, sir.
Q Sir, I would ask you if you would, you brought your notes, would you please search your notes to see if you did show him that number of photographs on that date?
A Do I have permission to read these?
Q Certainly.
THE COURT: Yes.
MR. SANSONE: No objection.
Q (By Mr. Barone) And if you would, while you are looking, relative to Mr. Sanders would you check to see if you can establish if you showed him any photographs on October 25th and if so, how many?
A I didn't show him any on October 25th. It was November 25th.
Q All right.
A I displayed the police photos to Mr. Sanders.
Q You displayed what?
A The police photos to Mr. Sanders, the mug shots.
MR. BARONE: Your Honor, I would object at this point to the statement made by the witness and ask or move it be stricken.
THE COURT: All right, the objection is sustained and the answer is stricken.
The jury is instructed to disregard the answer of the witness.
MR. BARONE: Your Honor, I would further move for a mistrial in that it is highly prejudicial.
THE COURT: What is it?
MR. BARONE: I would further move 
THE COURT: Do you want the jury out?
MR. BARONE: I would just move for a mistrial.
THE COURT: The motion is denied."