224 So.2d 441 (1969)
Felda Douglas GODBEE, Appellant,
v.
STATE of Florida, Appellee.
No. 69-11.
District Court of Appeal of Florida. Second District.
June 25, 1969.
Lee R. Horton, Public Defender, and Robert R. Crittenden, Asst. Public Defender, Winter Haven, for appellant.
Earl Faircloth, Atty. Gen., Tallahassee, and William D. Roth, Asst. Atty. Gen., Lakeland, for appellee.
McNULTY, Judge.
Appellant directly appeals his conviction on one count of a two-count information *442 charging possession and concealment of stolen property in violation of § 811.16, F.S.A. He raises two points on appeal, the first of which challenges the trial court's denial of his motion to suppress certain evidence which he alleges was seized pursuant to an unlawful search. His second ground on appeal alleges insufficiency of the evidence to support a verdict of guilt. We reject both contentions.
Appellant's first contention presents a case of initial impression in Florida in that it squarely raises for the first time whether a search may be made, without a warrant, for the sole purpose of making an "inventory" of the contents of an automobile in the lawful possession of police officers after the owner thereof has been lawfully placed under arrest, and when such search is not incidental to the arrest.[1] The evidence before the trial judge, on the motion to suppress heard prior to the commencement of the trial, revealed that two deputy sheriffs were at a certain location investigating a homicide. One of the officers had in his possession a warrant for the arrest of appellant on worthless check charges. While they were in the course of their investigation of the homicide, appellant drove up in his car and parked it illegally on the sidewalk near where the officers were standing. He got out of the car and locked it. The deputy with the warrant recognized appellant as the fugitive named in the warrant, summoned him and executed the warrant by placing appellant under arrest. Appellant then requested that he be permitted to go into a nearby store to make a phone call, and the officers allowed him to do so. When he failed to return the deputies themselves went into the store and discovered that he had absconded.
The officers testified that since the car was illegally parked and locked, and because the appellant had obviously fled, they caused the car to be hauled to a privately owned garage which was frequently used by the police for storage of automobiles in police custody. They further testified that it was routine procedure in the Polk County Sheriff's office to inventory personal property found in motor vehicles which were necessarily in the custody of the sheriff when the owner thereof has been arrested, or when it is necessary to confiscate or otherwise take into possession such motor vehicle. One deputy testified that the inventory is made "* * * for our benefit as well as theirs * * *".
Because they were busy in the homicide investigation, the officers did not get around to checking appellant's car until two days later. On this occasion it was necessary to force open the car, and upon taking an "inventory" the officers found guns, knives and other assorted weaponry, most of which had price tags on them indicating they had theretofore been the property of certain sporting goods merchants. It was subsequently determined that the articles had been stolen; and one of the guns was the subject matter of count two of the information herein on which appellant was convicted.
Appellant principally argues that a search of a motor vehicle without a warrant is authorized under only two circumstances: where the search is conducted incidental to a lawful arrest, or secondly, where it is conducted upon probable cause that a crime is then and there being committed. Appellant's contention overlooks the other permissible searches without a warrant, i.e. a "consent" search, a search of abandoned property and a search to prevent the further perpetration of a non-possessory class of crime of which there is probable cause to believe is in process. But in any case, the search herein does not fall within *443 any of these categories, thus the novel question here arises. The leading case on the point appears to be St. Clair v. State (1967), 1 Md. App. 605, 232 A.2d 565.[2] In that case the Maryland court carefully reviewed the federal and state cases on the subject and held permissible a so-called "inventory" search when made bona fide in the ordinary course of police procedures. Citing with approval Heffley v. State (1967), 83 Nev. 100, 423 P.2d 666, the court pointed out the distinction between an "inventory" search and an "exploratory" search; a valid though perhaps delicate distinction which must depend upon the totality of circumstances in each case. Here, there can be no question but that the search was for "inventory" purposes alone. The officers admitted they were not suspicious of possible incriminating evidence being in the car; and if they were suspicious, such suspicion would be without reasonable foundation. In sum, there is no evidence of a "fishing expedition".
Thus the officers were faced with the following situation: a car belonging to one who they had just arrested was left locked and standing illegally on the sidewalk; the prisoner had made good an escape and there was nothing to indicate he would soon return; and their duties required that they cause the car to be hauled from the illegal area to protective custody. They were further duty bound, under routine police procedures, to inventory the car and its contents both for the preservation thereof and to insulate themselves and the garage owner acting under their direction from possible responsibility in the event of theft or destruction. Gaining access to the interior of the car and making inventory of its contents for this purpose was not, in our view, an unreasonable "search" in violation of any constitutional prohibition. Indeed, from the facts related there was no other way to perform this duty. No probable cause existed to support a search warrant regardless of sufficient time to obtain one, and there was no reasonable prospect of consent, waiver or release from responsibility.
Another consideration fortifies our conclusion here. The facts indicate that appellant may well be charged with "constructive", if not actual, abandonment of the car; though we hasten to point out that this factor need not necessarily be present to authorize an "inventory" search without a warrant when the totality of circumstances show such "inventory" to be otherwise reasonable and prudent, and when it is in no way an exploratory search predicated upon a suspicion or subterfuge.[3] The reasonableness of any search without a warrant is measured from the standpoint of the conduct of the searchers. If their conduct is in some way reprehensible; or if they precipitate a search and are motivated therein solely by a desire to "hunt" for incriminating evidence; or if they do so without any plausible explanation or justification; the invasion is an unreasonable one. Here the tests have been met, and there is no evidence in this record from which it can be said that the officers did not act in good faith and in the prudent discharge of their official duties. There was ample justification for taking the car into custody in the first place, and reasonable cause to inventory it. The trial court was correct in denying the motion to suppress.
Concerning appellant's second point on appeal, we have reviewed the record and find that the evidence amply supports the verdict.
The judgment appealed from should be, and it is, affirmed.
LILES, C.J., and MANN, J., concur.
NOTES
[1] The "inventory" concept was touched upon in Gagnon v. State (Fla.App.3d 1968), 212 So.2d 337, and in Roush v. State (Fla.App.3d 1967), 203 So.2d 632, but the decisions in those cases rested on other grounds. Compare also our decision in Miller v. State (1962), 137 So.2d 21, which is initially distinguishable from the instant case in that there was no lawful arrest in that case.
[2] See, also, the subsequent case of State v. Montague (Wash. 1968), 438 P.2d 571.
[3] See Miller v. State, n. 1 supra, which is further distinguishable in that the search there was essentially exploratory and predicated on suspicion.