335 So.2d 626 (1976)
Fredric Winton ALTMAN, Appellant,
v.
STATE of Florida, Appellee.
No. 74-1232.
District Court of Appeal of Florida, Second District.
July 30, 1976.
Richard A. Lazzara, of Levine, Freedman & Hirsch, Tampa, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, and Robert J. Landry, Asst. Atty. Gen., Tampa, for appellee.
SCHEB, Judge.
The trial court denied the appellant/defendant's motion to suppress evidence on grounds that a police search of the defendant's car was a valid inventory search. We reverse.
Defendant's arrest occurred approximately one block from his home after the defendant lost control of his automobile as a result of a slight accident following a high speed chase by the police. After the arrest two officers conducted an inventory search of the defendant's car and found in excess of 5 grams of marijuana in the glove compartment. No search warrant was obtained *627 and no claim was made that the defendant consented to the search. Nor was any contention made that the officers had probable cause to believe the defendant had contraband in his vehicle. Defendant moved to suppress. No evidence was taken on defendant's motion, however defense counsel outlined the factual situation and the prosecutor agreed. It was stipulated the defendant had requested permission from the officers to make arrangements for someone else to take care of his car. In fact, from the stipulation it appears the defendant's friend was available on the scene to take charge of his car rather than have it impounded by the police.
After reviewing the stipulation and hearing argument of counsel, the trial judge denied the defendant's motion to suppress. Thereafter, defendant pled nolo contendere to possession of more than 5 grams of marijuana in violation of F.S. § 893.13(1)(e). As authorized in State v. Ashby, Fla. 1971, 245 So.2d 225, the trial court received the defendant's plea with reservation of right to appellate review of the legality of the seizure of the evidence.
The sole question on this appeal relates to the legality of this "inventory" search made by the police pursuant to impounding the defendant's car.
While we have not been cited to any opinions by the Supreme Court of Florida on this subject, questions involving inventory searches of vehicles impounded by the police have been reviewed on several occasions by the appellate courts of Florida[1] since Miller v. State, Fla.App.2d, 1962, 137 So.2d 21, wherein this court held that a police officer properly performed his duty to protect the owner's property by securing those valuables which were in plain sight and by impounding the automobile but that it was unreasonable for the officer to have dug beneath the floor mat from which he uncovered some lottery tickets. In that case appellant had been found unconscious following an automobile accident, and the car was impounded. The officer went to the hospital, made an illegal arrest of the appellant and then returned to the car and made the search after it has already been safely impounded.
Our next judicial venture in this area of the law was in Godbee v. State, Fla. App.2d, 1969, 224 So.2d 441, where the defendant had been lawfully arrested on a fugitive warrant but had escaped leaving his automobile illegally parked. The court, speaking through Judge McNulty, held that the police officers were entitled to search defendant's automobile without a warrant for the sole purpose of making an inventory of the contents even though probable cause did not exist for issuance of a search warrant and the search was not incident to an arrest. Judge McNulty distinguished Miller, supra, where there was no lawful arrest and the search was essentially an exploratory one predicated on suspicion of the police. Godbee, however, points out the true basis on which courts uphold inventory searches, i.e., that under routine police procedure it is essential when impounding a car to inventory it and its contents for preservation thereof as well as to insulate the police and garage owner from responsibility in the event of theft or destruction. However, in Godbee Judge McNulty included the following caveat:
"... The reasonableness of any search without a warrant is measured from the standpoint of the conduct of the searchers. If their conduct is in some way reprehensible; or if they precipitate a search and are motivated therein solely by a desire to `hunt' for incriminating evidence; or if they do so without any plausible explanation or justification; the invasion is an unreasonable one. Here the tests have been met, and there is no evidence in this record from which it can be said that the officers did not act in good faith and in the prudent discharge of their official duties. There was ample justification for taking the car into custody *628 in the first place, and reasonable cause to inventory it." 224 So.2d at 443. (Emphasis supplied.)
Thus, in considering the validity vel non of an inventory search, it becomes essential to initially determine whether it is necessary for the police to conduct the search. In Urquhart v. State, Fla.App.2d, 1971, 261 So.2d 535, we held an inventory search valid where the defendant was arrested for speeding, careless driving and for drinking. After Urquhart was placed in a police car, an inventory was made of the contents of his vehicle for the purpose of impounding it. During the inventory the police uncovered certain items which led to the defendant's arrest and conviction on a breaking and entering offense. Relying on Godbee and Gagnon v. State, Fla.App.3d, 1968, 212 So.2d 337, this court found nothing wrong with the procedure. But in concurring specially in the denial of rehearing in Urquhart, Judge Mann pointed out that while the right of citizens against dangerous drivers is more important than the individual's right not to have his car towed away, still the individual's right of privacy is superior to the power of the police to impound the car unnecessarily. Thus he cautioned enforcement officers "... [they] would make a grave mistake in relying excessively and unnecessarily upon inventory searches as a way around the Fourth Amendment."
In State v. Volk, Fla.App.2d, 1974, 291 So.2d 643, the trial judge suppressed evidence produced in consequence of an inventory search of a motor vehicle. On appeal this court affirmed, finding that there was no necessity for impounding the vehicle and that such impoundment was done contrary to the usual procedure followed in traffic cases. In Volk, this court's opinion referred to other authorities indicating that where other drivers were available to remove an arrestee's car to a safe place that such was an alternative to the need for police custody and impoundment. Thus, necessity has always been considered by this court to be a threshold requirement to validate a warrantless nonconsensual search of an automobile where the search was beyond that incident to a valid arrest and one not based upon probable cause.
A series of recent decisions of our sister courts indicates their accord with this prerequisite. In State v. Jenkins, Fla.App.4th, 1975, 319 So.2d 91, while upholding an inventory search as being reasonable, the Fourth District stressed that where the position of a car did not create a hazard an individual should be afforded the choice of leaving his car in its location or calling someone else to take possession of it. And in Weed v. Wainwright, Fla.App.4th, 1975, 325 So.2d 44, that court held that where there was no reason for search of defendant's car after an officer had arrested its occupants, that such a search was illegal when the officers merely presumed the car "unattended." There the owner's car was left parked during business hours at a parking lot furnished by a grocery supermarket. Finally, in Chuze v. State, Fla.App.4th, 1976, 330 So.2d 166, a police officer had arrested the defendant and given him the option of calling his automobile club to remove his vehicle from the scene of the arrest. The defendant called his motor club; however, before its tow truck could arrive additional officers arrived on the scene. These newly arrived officers proceeded to conduct what they termed an inventory search preparatory to having the police tow and impound the vehicle. As in the case before us, the search in Chuze yielded marijuana in excess of 5 grams. Chuze pled nolo contendere and appealed from denial of his motion to suppress the evidence seized from his automobile. In reversing, the Fourth District concluded that such a search was not an inventory search conducted in good faith but rather a pretext for a warrantless exploratory search of defendant's vehicle which violated the defendant's rights under the Fourth Amendment to the United States Constitution.
Likewise, in a forfeiture proceeding In Re 1972 Porsche 2-door, Fla.App.3d, 1975, 307 So.2d 451, the Third District found there was no necessity to justify the police having towed away a car and conducted a search *629 thereof for inventory purposes where the defendant was arrested at someone else's residence and his car was legally parked on a public street outside his friend's residence. More recently, the First District in Benton v. State, Fla.App.1st, 1976, 329 So.2d 385, held an inventory search was unjustified where the defendant was arrested for reckless driving and there was no indication that his car was illegally parked and the owner refused to grant permission to have his car taken to the police station.
On the other hand, numerous cases have upheld the officer's right to take possession of the vehicle and conduct an inventory search. See, for example, State v. Cash, Fla.App.1st, 1973, 275 So.2d 605, where the car was on a motel parking lot and the owner of the lot requested that it be removed.[2]
A common pattern running through these cases is that the police must act in good faith and not use the inventory procedure as a subterfuge for a warrantless search of a vehicle. A prime criterion to determine if the police have taken lawful custody of a motor vehicle is whether or not it is justifiable for the police, acting under routine police procedure, to become bailees of the vehicle. Here it was stipulated the defendant desired and had the ability to have his car removed by someone without intervention of the police. Therefore, the underlying necessity for police custody did not exist. When the driver of a motor vehicle is arrested and a reliable friend is present, authorized and capable to remove an owner's vehicle which is capable of being safely removed; or where the arrestee expresses a preference as to towing service and designates an appropriate carrier and destination for the vehicle, it is unnecessary for the police to impound it.[3] In either of these instances the rationale for an inventory search does not exist.
Our comment on the prerequisite of necessity for impoundment as the threshold to justify an inventory search is a timely caveat to law enforcement officers particularly in view of the recent opinion of the United States Supreme Court in South Dakota v. Opperman, ___ U.S. ___, 96 S.Ct. 3092, 48 L.Ed.2d ___, 19 CrL 3314, opinion filed July 6, 1976.[4] In Opperman the respondent's car had been impounded after it was discovered by police illegally parked in a "tow away" zone. Following standard police procedures, officers inventoried its contents and discovered marijuana in the glove compartment, for the possession of which respondent was subsequently arrested. After his motion to suppress the evidence was denied, he was convicted. The Supreme Court upheld the police procedures as reasonable under the Fourth Amendment pointing out that the protective search was carried out in accordance with the standard police procedures and was constitutionally permissible.
Interestingly, in Opperman the respondent's motion to suppress challenged the inventory only as to items inside the car not in plain view. The court noted however that once the police were lawfully inside the car and inventoried personal property in plain view, it was not unlawful to unlock the glove compartment to which vandals would have ready and unmolested access *630 once inside the car. It is not necessary and we do not pass on the question of the scope of the search before us since we hold that the threshold requirement of necessity to make an inventory search was not present in this case.
We also note that while Opperman was not primarily concerned with the authority of the police to take the car into custody, the Supreme Court mentioned several circumstances which do justify such an impoundment: to permit the flow of traffic, preserve evidence, or remove an illegally parked car which jeopardizes both public safety and the efficient movement of vehicular traffic. ___ U.S. ___, 96 S.Ct. 3092, 19 CrL at 3315. This is consistent with the Florida cases that require necessity for impoundment before the inventory search can be justified.
Reversed.
HOBSON, Acting C.J., and GRIMES, J., concur.
NOTES
[1] See also the excellent Annotation at 48 A.L.R.3d 537 on Lawfulness of "Inventory Search" of Motor Vehicle Impounded by Police.
[2] Florida courts have also upheld inventory searches in the following cases: Gullo v. State, Fla.App.4th, 1973, 280 So.2d 501; State v. Galloway, Fla.App.3d, 1972, 266 So.2d 53; State v. Ruggles, Fla.App.3d, 1971, 245 So.2d 692; Knight v. State, Fla.App.3d, 1968, 212 So.2d 900; Gagnon v. State, Fla.App.3d, 1968, 212 So.2d 337; Roush v. State, Fla.App.3d, 1967, 203 So.2d 632; Jackson v. State, Fla.App.3d, 1966, 192 So.2d 78. Cf. Mattson v. State, Fla. App.1st, 1976, 328 So.2d 246, in which the court found the car was lawfully impounded but then upheld a subsequent search on grounds of probable cause rather than on an inventory search.
[3] Of course, as the court implied in Chuze, supra, the police need not wait an unreasonable length of time to accommodate the owner's wishes.
[4] The Court cited Godbee v. State, Fla.App.2d, 1969, 224 So.2d 441, as Florida authority in support of the proposition that State courts have overwhelmingly concluded that, even if an inventory is challenged as a "search", such an intrusion is constitutionally permissible.