400 So.2d 95 (1981)
Sherman NEALY, Appellant,
v.
The STATE of Florida, Appellee.
No. 80-1253.
District Court of Appeal of Florida, Third District.
June 9, 1981.
Rehearing Denied July 17, 1981.
Flynn, Rubio & Tarkoff and Michael H. Tarkoff, Miami, for appellant.
Jim Smith, Atty. Gen. and Susan C. Minor and Joel Rosenblatt, Asst. Attys. Gen., for appellee.
Before HENDRY, SCHWARTZ and NESBITT, JJ.
HENDRY, Judge.
Appellant Sherman Nealy seeks to overturn the trial court's ruling which denied *96 his motion to suppress evidence obtained by a police officer who was performing a so-called "inventory" of his automobile subsequent to his arrest on a charge of operating a motor vehicle with a suspended driver's license. The trial court's ruling was entered at a probation revocation hearing instituted as a result of an affidavit of violation of probation charging Nealy with: (1) operating a motor vehicle with a suspended license[1] and (2) possession of a controlled substance, to-wit: cocaine.[2] At the revocation hearing, the state stipulated to the dismissal of the driver's license charge, and the court found Nealy in violation of probation[3] on the possession of controlled substance charge, revoked probation, and sentenced him to four years in the state penitentiary. We have jurisdiction. Art. V, § 4(b)(1), Fla. Const.
Upon a careful review of the record and the facts presented, we find that the warrantless "inventory" search was unreasonable and the use against appellant of the fruits of the search violated his rights guaranteed by Article I, Section 12 of the Florida Constitution. We further determine that the application of the exclusionary rule is mandated in these proceedings, and requires reversal of the challenged ruling.
On March 31, 1980, at about mid-day, appellant was stopped for a traffic violation, making an illegal U-turn, in the City of Opa Locka. The police officer, checking his driver's license, received information that the license was suspended, and informed appellant that he was placing him under arrest for this charge. The officer asked for proof of ownership of the automobile, and when appellant opened his glove compartment and produced the registration, the officer saw "a large amount of U.S. currency" inside. He then requested a back-up so that, as he said, he "would have a witness with him when he counted the money." After placing appellant in the back of the police car, the officer asked him if he wanted his car towed or left on the scene, and appellant replied that he wanted it left. The officer nevertheless proceeded to "inventory" the contents of the car because, he testified, this was required by departmental policy, especially if there was a large amount of property in the vehicle. (He did not indicate that it would be necessary to impound the vehicle under after he had taken the "inventory".) During the "inventory," a small plastic container was discovered on top of the sun visor on the driver's side of the vehicle. The officer was unable to determine its contents until he had opened it; he then saw that it contained a white powder, apparently cocaine. The container and its contents were impounded and appellant was further placed under arrest for this charge (possession of controlled substance). At some point during these occurrences (the record is unclear as to exactly when), appellant's brother, who apparently lived nearby, came on the scene but was told to leave by the officers. Appellant was not allowed to speak to him, nor did the officers speak to him about his brother.
The question of the legality vel non of a police "inventory" of an arrestee's vehicle has often been considered by our Florida courts in recent years and the criteria against which the police action is to be measured have been well defined in our Florida jurisprudence.
The proper test to apply initially in determining the validity of an inventory search of an arrestee's vehicle in this state, and the one which we employ here, is set forth in the case of Altman v. State, 335 So.2d 626 (Fla. 2d DCA 1976):

*97 Thus necessity has always been considered by this court to be a threshold requirement to validate a warrantless nonconsensual search of an automobile where the search was beyond that incident to a valid arrest and one not based upon probable cause.
335 So.2d at 628 (emphasis supplied).
Additionally, since an "inventory" is by definition a search performed in connection with lawful impoundment of a vehicle, the question of whether police custody of the vehicle was itself lawful (and necessary) must also be answered in the affirmative in order to uphold the instant inventory. See State v. Sanders, 387 So.2d 391 (Fla. 2d DCA 1980); Altman v. State, supra; Chuze v. State, 330 So.2d 166 (Fla. 4th DCA 1976); Benton v. State, 329 So.2d 385 (Fla. 1st DCA 1976). Because the questions of necessity for the inventory and lawfulness or necessity for the impoundment are interrelated, we shall consider them together.
The following factors have been held to constitute necessity or otherwise provide support for an inventory and impoundment of an arrestee's vehicle: (1) where the vehicle's location is a hazard or nuisance to traffic,[4] (2) where the vehicle is owned by someone other than the arrestee, to protect against claims of loss or damage by the true owner,[5] and (3) where the vehicle is subject to forfeiture.[6]
Sub judice there is no indication that appellant's car was in any way a hazard to traffic. The fact that the officer asked whether appellant preferred to leave the car where it was or have it towed to the station necessarily implies that its location was not a factor in the inventory. Nor is there any support in the record for the existence of the latter two factors.
Another factor arguably in support of the need for inventory and impoundment (and the one on which the state relies herein) is that of safeguarding an arrestee's property against loss and/or the police against claims of loss.[7] This factor *98 has been strongly qualified by our Florida courts and although some weight has been given to the police officer's good faith and intent in performing an inventory under this rationale, the prevailing view in Florida is that this "protective" factor, without more, is insufficient justification[8] where the arrestee is willing to take responsibility for leaving his vehicle at the location of the stop, or where alternative means are available to accomplish the protective function. Miller v. State (Fla. 1981) (Case No. 56,831, opinion filed May 28, 1981); Chuze v. State, 330 So.2d 166 (Fla. 4th DCA 1976).[9] Recognized alternative means include, for example, authorization by the arrestee for a friend who is present, or a towing service, to remove the vehicle to an appropriate location, Jones v. State, 345 So.2d 809 (Fla. 4th DCA 1977); Altman v. State, 335 So.2d 626 (Fla. 2d DCA 1976); Chuze, supra.
It appears from the instant facts that the police ignored the possibility that appellant's brother may have been able to assist in removing the vehicle. Additional alternatives appropriate in light of appellant's willingness to take responsibility for leaving his vehicle, were also apparently ignored, to-wit: simply locking and securing the vehicle, locking the money in the trunk of the vehicle, or removing the money to the police station for safekeeping.[10] It thus appears that the most intrusive and, we find, unwarranted course of action was chosen, and the attempted justification of the search under the "protective" rationale simply will not suffice to remove the search from the recognized rule that "[a]n `inventory' search will be unreasonable if it is utilized as a pretext to conduct an `exploratory' search in order to hunt for incriminating evidence." State v. Jenkins, 319 So.2d 91, 93 (Fla. 4th DCA 1975).
Because we find no justification to support the search here in question as a lawful inventory, [and it is not contended, nor could we so find, that this search falls within any of the other recognized exceptions to the warrant requirement], we now consider whether the exclusionary rule applies to prevent the use of the fruits of the illegal search against appellant in a probation revocation proceeding.
Florida law on this question has undergone a permutation in the last few years; the present view being that the exclusionary rule does so apply.[11] Article I, Section 12 of the Florida Constitution provides that *99 the fruits obtained in an illegal search "... shall not be admissible in evidence." This provision has been interpreted as "an express constitutional exclusionary rule," which should be applied in probation revocation proceedings as well as original criminal prosecutions. Grubbs v. State, 373 So.2d 905, 909 (Fla. 1979); also see Huppertz v. State, 399 So.2d 992 (Fla. 3d DCA 1981); State v. Dodd, 396 So.2d 1205 (Fla. 3d DCA 1981) (Case Nos. 80-322, 80-499, opinion filed April 21, 1981); Ray v. State, 387 So.2d 995 (Fla. 4th DCA 1980). But see Croteau v. State, 334 So.2d 577 (Fla. 1976).
Because we find both that the search of appellant's automobile was an unreasonable one and that the exclusionary rule applies, reversal is required. Since our ruling on these points is determinative, there is no need to consider the other point raised on appeal, i.e., whether ownership of the contraband in question was properly attributed to appellant.
The order appealed is hereby
Reversed.
NOTES
[1] § 322.34 Fla. Stat. (1979).
[2] § 893.03(2)(a)(4) Fla. Stat. (1979).
[3] Appellant had originally been charged by information on June 26, 1976 with two counts of possession of controlled substances (heroin and cocaine) in violation of § 893.03 Fla. Stat. (1975), was later charged on October 27, 1977, with possession of unlawful sale of a controlled substance (heroin) in violation of § 893.03 Fla. Stat. (1977), and on February 13, 1978, was placed on five years' probation with a special condition that he serve one year in the county stockade, which time he did serve.
[4] State v. Sanders, supra; State v. Dearden, 347 So.2d 462 (Fla.2d DCA 1977).
[5] Fields v. State, 369 So.2d 603 (Fla.1st DCA 1978), cert. denied, 368 So.2d 1366 (Fla. 1979); State v. Broomfield, 364 So.2d 863 (Fla.2d DCA 1978).
[6] See, e.g., § 943.41-44, Fla. Stat. (1979).
[7] We feel it necessary to distinguish in this connection the United States Supreme Court decision in South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000, (on remand) 247 N.W.2d 673 (S.D. 1976) (reaching contrary result on different grounds), wherein the Court also considered an inventory performed under a "caretaking" rationale. The Court reversed the South Dakota Supreme Court's decision that the inventory constituted a violation of the Fourth Amendment, and remanded. In upholding the impoundment, Chief Justice Burger, speaking for the majority, reasoned that:

[t]he authority of the police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge.
428 U.S. at 369, 96 S.Ct. at 3097.
The opinion went on to enunciate the needs satisfied by a routine police practice of inventorying the contents of impounded vehicles:
[1] [T]he protection of the owner's property while it remains in police custody,
[2] the protection of the police against claims or disputes over lost or stolen property, and
[3] the protection of the police from potential danger.
428 U.S. at 369, 96 S.Ct. at 3097 (citations omitted).
The salient facts of Opperman were that the vehicle had been impounded for illegal parking, the owner was not then present, and the inventory was carried out at the city impound lot, mainly for the purpose of "safekeeping," because of numerous recent break-ins and thefts from vehicles in that lot.
Whereas, sub judice, the claimed justification for the impoundment of appellant's vehicle was not that it constituted any sort of impediment to traffic or threat to public safety, but rather the impoundment itself was said to have been carried out for a "protective" purpose. Our conclusion, infra, that the "protective" purpose does not suffice to sustain the impoundment under the facts before us thus serves to distinguish the lawful impoundment in Opperman from the unlawful or unnecessary impoundment in the instant case.
It is further interesting to note that on remand the South Dakota Supreme Court concluded that its interpretation of the state constitutional search and seizure provision called for a higher standard of protection and that only "minimal interference" with an individual's protected rights would be upheld absent a warrant, i.e., that:
... noninvestigative police inventory searches of automobiles without a warrant must be restricted to safeguarding those articles which are within plain view of the officer's vision[,]
[thus proscribing the search of the closed glove compartment where the contraband had been discovered].
State v. Opperman, S.D., 247 N.W.2d 673, 675.
We mention this latter disposition for its relevance to any question in the present case of whether or not the police officer may have been justified in seizing the container which, it seems, was not in his "plain view," even from inside the vehicle, assuming arguendo that he had a right to be inside the vehicle conducting the search when he discovered it, which right we have negated by our finding of the unjustifiable nature of the impoundment and "inventory" of appellant's vehicle here.
[8] This court noted in In re 1972 Porsch 2 Dr., 307 So.2d 451 (Fla.3d DCA 1975), that a departmental policy of self-protection from claims of loss was legally insufficient to justify impoundment of that vehicle in a forfeiture proceeding. In Weed v. Wainwright, 325 So.2d 44 (Fla. 4th DCA 1975), the Fourth District held that the mere fact the vehicle would remain unattended (in a parking lot) was not sufficient to justify a search.
[9] Of course, the converse is also true that when an arrestee is unable to accept responsibility for leaving the vehicle on the scene (the most frequent example being where the arrestee is very intoxicated), and no alternatives are available, inventorying and impoundment may be justified as good faith attempts to safeguard an arrestee's property. Knight v. State, 398 So.2d 908 (Fla. 3d DCA 1981); State v. Sanders, 387 So.2d 391 (Fla. 2d DCA 1980); State v. Cook, 358 So.2d 42 (Fla. 2d DCA 1978); Mattson v. State, 328 So.2d 246 (Fla. 1st DCA 1976).
[10] See for example, United States v. Prazak, 500 F.2d 1216 (9th Cir.1974) (lock property in trunk of vehicle); State v. Tully, 348 A.2d 603 (Conn. 1974) (lock and leave, and removal of property in plain view to police station).
[11] The federal rule is apparently contrary, the following cases having held the exclusionary rule inapplicable to probation (or parole) proceedings: United States v. Frederickson, 581 F.2d 711 (8th Cir.1978); Latta v. Fitzharris, 521 F.2d 246 (9th Cir.), cert. denied, 423 U.S. 897, 96 S.Ct. 200, 46 L.Ed.2d 130 (1975) (parole); United States v. Farmer, 512 F.2d 160 (6th Cir.), cert. denied, 423 U.S. 987, 96 S.Ct. 397, 46 L.Ed.2d 305 (1975); United States v. Brown, 488 F.2d 94 (5th Cir.1973); United States v. Hill, 447 F.2d 817 (7th Cir.1971); United States ex rel. Sperling v. Fitzpatrick, 426 F.2d 1161 (2d Cir.1970) (parole); United States ex rel. Lombardino v. Heyd, 318 F. Supp. 648 (E.D.La. 1970), aff'd, 438 F.2d 1027 (5th Cir.), cert. denied, 404 U.S. 880, 92 S.Ct. 195, 30 L.Ed.2d 160 (1971).