GLICKSTEIN, Judge,
dissenting.
I have changed some of the text of my original dissent because of changes in the majority opinion.
Because I perceive critical facts differently from the majority, my conclusions, which are as follows, are also different.
I
The trial court erred in holding under the plain view doctrine there was probable cause to search the vehicle.
The majority says: “While checking the VIN number, the officer noticed, through the window, what appeared to be marijuana “joints,” (hand-rolled marijuana cigarettes), on the floor board.”
The transcript reflects the following:
“Q While you were standing outside the vehicle looking in the VIN plate area, what, if anything, did you observe inside the vehicle?
“A When I looked in the vehicle on the floorboard, it appeared to be marijuana joints.
“MR. LIDA: I object to what appeared to be marijuana joints. He asked him to just describe what he saw. It is a conclusion.
“THE COURT: I will sustain the objection.
“If you can reach that conclusion — You can give that conclusion, but you have to state the basis for reaching it, so that is your conclusion and we are doing it in reverse.
“That is your opinion and he is entitled to give a lay opinion as to what it is but he has to tell us what his basis is for reaching that opinion.
“Q (By Mr. Magrino) What did you see?
“A I saw several small rolled burnt cigarette wrappings which in my opinion looked half-smoked.
“Q Have you ever seen items like that in the past?
“A Yes, several times.
“Q By several times—
“A I would have to again say hundreds of times.
“Q And in the past when you had seen those items, had you ever forwarded those items to the Broward Sheriffs Crime Laboratory and received test results back on what those items were?
“A Yes.
“MR. LIDA: When we are talking about items, we are talking about burnt cigarette wrappings. I want the record to be clear that he is referring to those items.
“THE COURT: He is talking about not necessarily the contents but the item in the entirety.
“MR. LIDA: He referred to burnt cigarette wrappings.
“THE WITNESS: Rolled cigarette wrappings.
“THE COURT: Hand-rolled?
“THE WITNESS: Hand-rolled, yes.
“Q (By Mr. Magrino) What was the report back in the past that you had gotten from the lab?
“MR. LIDA: I object to what the reports were in the past. I don’t think it is relevant and unless he asks which cases it was and what we are talking about—
“THE COURT: I will overrule the objection. He is attempting to tell us his basis for his opinion.
*1365 [[Image here]]
“Q While you were on the outside of the car and the car was closed, the doors were closed?
“A Yes, it was.
“Q You were looking at the VIN number from the driver’s side on the windshield on the outside of the car?
“A I began looking at the VIN number as well as into the inside of the car.
“Q When you looked down on the floorboard of the car, you observed what appeared to be a hand-rolled cigarette wrapping that was partially burned?
“A Yes.
“Q And you did not know at that time what was in the hand-rolled cigarette wrapping, if anything?
“A No, I did not.
“Q You didn’t notice any marijuana residue around the car, you just noticed those wrappings, those cigarette wrappings that were burnt; is that right?
“A Yes.
“Q You didn’t know at that point whether it was a hand-rolled cigarette butt or contraband cigarette butt or if there was anything inside the wrapping?
“A I could tell there was substance inside the wrapping. I could not tell exactly what it was.
“Q You couldn’t see it?
“A No.
“Q You couldn’t see what was in the wrapping?
“A No, I could not.
“Q So if you couldn’t see there was anything in there and it was lying flat on the floor, I assume — was it on the floorboard of the car?
“A Yes.
“Q How could you tell whether there was anything inside the wrapping at all if you couldn’t see into there?
“A Just from the structure and shape, the curvature of the wrapping. You can tell if something is in a cigarette paper or else the cigarette paper would just be lying flat on the floor.
“Q It would still be rolled, wouldn’t it? Are you familiar with Bugler Rolling Papers or hand rolling papers?
“A I am familier [sic] with rolling papers.
“Q And you knew they sell cut and loose tobacco?
“A Yes.
“Q Do you know whether or not you ever have seen anybody roll their own tobacco and smoke their own cigarettes?
“A Sure.
“Q In your experience, if the ends are tightly rolled, sometimes what is inside can come out and it appears still rolled but what was inside would be out of it?
“A I imagine that it’s true.
“Q So, in this particular case, wouldn’t it be fair to say that although you could see the burnt cigarette wrappings, you had no idea of what was inside them or if anything was at all?
“A In my opinion, when I look in there, there was something inside.
“Q I am not asking you—
“MR. MAGRINO: He is trying to answer the question as best he can.
“THE COURT: Overruled.
“Q (By Mr. Lida) I didn’t hear your answer. I am sorry.
“You thought there was something inside the cigarette wrapping?
“A I could not tell, of course, what was inside.
“Q You couldn’t tell what color it was?
“A No.
“Q You couldn’t see any marijuana seeds on the floorboard of the car?
“A No.
“Q Now, pursuant to that, I think you told me in deposition and correct me if I am *1366 wrong, you thought you had probable cause to go into the car and conduct a further investigation.
“A Yes, I did.
“Q You never got consent to go into the car?
“A No, I did not.”
The majority’s revised opinion now gives a little more detail about the butts seen by the officer, but still concludes the search was justified on the basis of the officer’s experience and knowledge. I do not see how butts which could be either of hand-rolled tobacco cigarettes or of marijuana cigarettes — as the officer acknowledged— can be a lawful basis for an automobile search. “[Ajutomobiles and other conveyances may be searched without a warrant in circumstances that would not justify the search without a warrant of a house or an office, provided that there is probable cause to believe that the car contains articles that the officers are entitled to seize.” Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), citing Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). The basis of such a warrantless search is reasonable cause for the officer’s belief that the automobile contains contraband.
It seems to me that all the officer had here was articulable suspicion, if indeed he had that. I think the majority’s language fits the definition of articulable suspicion, not probable cause.
Appellant contends that the information available to Officer Roberts before he conducted his search inside the vehicle did not establish probable cause for him to believe a crime had been committed or was in progress. I agree. A major authority on which he relies is Carr v. State, 353 So.2d 958 (Fla. 2d DCA 1978). There the appellant was approached late one evening and questioned, while outside his vehicle, concerning his presence in a certain residential area. He explained why he was there and gave the officer proper identification as requested. The officer then shined his flashlight into the vehicle “to check the interior,” and observed therein two hand-rolled cigarettes. The officer entered the vehicle, seized and examined the cigarettes and determined they appeared to contain marijuana. The officer arrested Carr for misdemeanor possession of marijuana. Then he reached back into the vehicle and searched a folded blanket, finding what appeared to be “two lids of marijuana” and a rolling device. Carr was then arrested for “felony possession and paraphernalia.” Id. at 958. The officer together with another then searched the truck further and found additional contraband.
At the hearing on suppression the officer said when he saw the two cigarettes through the window he “knew” they were marijuana because they were unevenly rolled and the ends were twisted. He could not see any marijuana. The appellate court reversed the trial court’s finding that the seizure of the marijuana cigarettes was proper and said that absent a search warrant, the search and seizure had to be within a recognized exception to the warrant requirement, the court finding no applicable exception. The officer had no probable cause to arrest, as the state argued, and could not validly search on that basis. The Carr court quoted the opinion in Dixon v. State, 343 So.2d 1345 (Fla. 2d DCA 1977), for the test to determine probable cause. That test is “whether the facts and circumstances within the officer’s knowledge, and of which he had reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been committed.” 353 So.2d at 959, quoting Dixon. The officer’s known facts in Carr failed to meet this standard.
The state argued further, in Carr, that the plain view exception applied. The appellate court said it did not, as all that was in plain view were two cigarettes, not contraband. Id. Both the seizure of the cigarettes and the subsequent search and seizure were therefore unreasonable and should have been suppressed.
*1367 If the sole basis for the search and seizure was the plain view doctrine, I believe it was improper, and pursuant to Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), the evidence that resulted should have been suppressed.
II
The second ground stated by the trial court for denying appellant’s motion to suppress — in fact, when stated orally its primary ground — was that the search which revealed the presence of contraband was a proper inventory search. Appellant argues that the inventory search could not be proper when there was no impoundment of the vehicle, and, alternatively, if the vehicle was properly impounded, the officer did not advise appellant of reasonable alternatives to impoundment.
The state argues that there was no im-poundment nor intention to impound; that the officer made the inventory search primarily for the benefit of appellant; that impoundment is not a necessary condition of such inventory searches; and that since there was no impoundment, there was no need to tell appellant of available alternatives thereto.
The parties, pursuant to our request after oral argument, filed supplemental briefs upon the question whether impoundment was a prerequisite to a valid inventory search. That question was not answered, in my view, by Miller v. State, 403 So.2d 1307 (Fla.1981).
I would find as follows:
1. There was no official impoundment here; but such was unnecessary if the inventory search was otherwise defensible.
2. There was no right nor duty on the officer’s part to conduct an inventory search in this case.
With respect to the first conclusion, in South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), the court stated that “[i]n applying the reasonableness standard adopted by the Framers, this Court has consistently sustained police intrusions into automobiles impounded or otherwise in lawful police custody where the process is aimed at securing or protecting the car and its contents.” 428 U.S. at 373, 96 S.Ct. at 3099, 49 L.Ed.2d at 1007 (emphasis added). See also State v. Floyd, 120 Ariz. 358, 586 P.2d 203, 206 (Ct.App. 1978); Robertson v. State, 541 S.W.2d 608 (Tex.Ct.App.1976); United States v. Feld-man, 788 F.2d 544, 552 n. 10 (9th Cir.1986).
However, I believe the “inventory search” in the present case was a violation of Caplan’s constitutional right to protection from unreasonable search and seizure. It is true, as the state points out, that appellant gave his authorization and consent to have the vehicle towed by the wrecker that usually tows vehicles for the police. I assume it is also true that the police routinely search vehicles towed under their auspices — though it may well be this is only because usually the vehicles are also being impounded, and consideration has not been given to a distinction from other circumstances. It may also be inferred that Caplan requested the policeman to call for the wrecker because (1) the policeman made clear the tow had to be prompt because the intersection was a busy one, (2) Caplan was rattled because of the accident, and (3) Caplan had no reason to suppose the police would go through the contents of his automobile.
Nevertheless, the officer did not advise appellant of reasonable alternatives to the “impoundment.” Appellant merely requested that the officer call a tow truck. Appellant was not arrested nor otherwise unable to make a decision regarding any valuables in the automobile. See, e.g., Altman v. State, 335 So.2d 626, 628-29 (Fla. 2d DCA 1976) (In considering the validity vel non of an inventory search, it becomes essential to determine initially whether it is necessary for police to conduct the search. “A prime criterion to determine if the police have taken lawful custody of a motor vehicle is whether or not it is justifiable for *1368 the police, acting under routine police procedure, to become bailees of the vehicle.”)