## WAYNE ALLEN MUSGROVE *v.* STATE OF MARYLAND

[No. 40, Initial Term, 1967.]

542

Decided August 1, 1967.

The cause was argued before ANDERSON, MORTON, and ORTH, JJ., and MACGILL, J., Chief Judge of the Fifth Judicial Circuit, specially assigned, and JENIFER, J., Associate Judge of the Third Judicial Circuit, specially assigned.

*Stanley M. Dietz* for appellant.

*Thomas A. Garland, Assistant Attorney General,* with whom were *Thomas B. Finan, former Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Ronald Willoner, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

MORTON, J., delivered the majority opinion of the Court. MACGILL, J., dissents.

The Appellant was found guilty by a jury in the Circuit Court for Prince George's County on counts charging larceny of a motor vehicle in each of two indictments. He has appealed from his convictions, contending that the trial court committed error by (1) failing to grant his motions for judgments of acquittal at the conclusion of the State's case and at the conclusion of all the evidence in the case, (2) by failing to grant a mistrial

upon his motion when prejudicial questions were asked of him by the State's Attorney, (3) by failing to instruct the jury as to the definition and elements of the crime of motor vehicle larceny, and (4) by failing to grant his motion to suppress evidence secured as the result of an unlawful arrest and unlawful search and seizure.

On April 13, 1965, a 1961 Triumph motorcycle was stolen from Richard Sisson in Prince George's County. On May 5, 1965, a 1955 Triumph motorcycle was stolen from John Gilbert Ward in the same county. These thefts were reported to the Prince George's County police. Detective James Ross of the Prince George's County Police Department was assigned to these cases and he suspected, from certain information in his possession, that the Appellant was connected with the disappearance of the motorcycles. On July 2, 1965, while cruising in a police car, he observed the Appellant, operating a motorcycle, drive out of a parking lot onto Rhode Island Avenue without stopping. He stopped the Appellant and issued a traffic ticket to him for failing to stop upon entering a through highway. At the same time he attempted to check the Appellant's registration card against the serial numbers on the motorcycle. He was unable to check the serial number on the frame because the gas tank had been affixed in such a manner as to obliterate the numbers. In examining the serial number on the crankcase he noticed that one serial number appeared to have been crudely stamped on the crankcase and that it did not resemble a factory stamp.

Because the officer "was unable to check his registration properly", the Appellant was asked to accompany the officer to Police Headquarters. The motorcycle was stored in the garage at the headquarters and the Appellant was interviewed after being advised of his right to remain silent and of his right to counsel. He then admitted that he had altered the serial number on the motorcycle to make it correspond with the number on his registration card. He further stated that he had purchased a motorcycle frame from an individual whose name he did not know. He agreed to accompany Detective Ross to his father's home to look at other parts which he had removed from his motorcycle. These parts, with the consent of the Ap-

pellant, were taken into custody. On the same day Mr. Sisson came to the police headquarters and identified certain parts of the motorcycle as having been removed from his 1961 Triumph. The Appellant was charged at that time with larceny, obliterating a serial number and with defacing a serial number. On July 12th, John Gilbert Ward came to the station and identified the engine on the cycle as his property. Thereafter the Appellant was charged with the larceny of that vehicle. The traffic charge against the Appellant was dismissed when Detective Ross failed to appear at the time set for trial.

## I.

The contention of the Appellant that the trial court erred in denying his motions for judgments of acquittal is, we conclude, without substance. By going forward with the evidence, the Appellant's motion at the conclusion of the State's case was withdrawn. Maryland Rule 755 b. It is a familiar principle of the law of theft in this State that the recent possession of stolen goods gives rise to a presumption that the possessor was the thief. *Debinski v. State,* 194 Md. 355, 360. The Court of Appeals has declined to set a yardstick to measure "recent" but has ruled that what is "recent" depends upon the circumstances in each case. *Butz v. State,* 221 Md. 68, 77. Under the State's theory of the case, the Appellant stole the motorcycles and disassembled them and incorporated the parts in the cycle which he was operating when apprehended. Under such circumstances we cannot say, as a matter of law, that a period in excess of two months was not recent. Although the Appellant has advanced the argument that there was no evidence produced that the two motorcycles in question were stolen, the record discloses that there was a stipulation that Mr. Sisson's motorcycle was stolen and that its market value at the time was $600.00. Mr. Ward testified that his motorcycle was missing on May 5, 1965, and later referred to it as having been "stolen". He gave his opinion that the fair market value of it at the time he discovered it missing was $300.00. The explanation given by the Appellant that he had purchased the motorcycle parts from a vaguely described third person presented an issue of credibility for the jury to resolve. Obviously, there was sufficient evidence, as a matter of law, which, if believed by the jury,

was sufficient to convict. *Borman v. State,* 1 Md. App. 276, 280; *Royal v. State,* 236 Md. 443, 448; *Coates v. State,* 232 Md. 72.

## II.

The State's Attorney, on cross-examination, without objection, questioned the Appellant about a conviction for assault which he admitted. The Appellant was then asked whether or not he had been given a sentence of three months for this conviction. His reply was that he had served forty days. After further questioning, counsel approached the bench and it was developed that the Appellant had served forty days on conviction of a traffic violation. The Appellant was then again questioned in the hearing of the jury as to the conviction for which he had served the forty days. He again replied that it was for assault. We fail to find any prejudice resulting to the Appellant which would have required a mistrial. The jurors heard nothing about a motor vehicle violation and so far as they were concerned it was simply a question as to whether the Appellant had served three months or forty days on an admitted conviction of assault. There is no contention that evidence of the prior conviction for assault was not admissible for its effect on the Appellant's credibility. *Burgess v. State,* 161 Md. 162, 155 A. 153 (1931); *Linkins v. State,* 202 Md. 212, 96 A. 2d 246 (1952); *Taylor v. State,* 226 Md. 561, 174 A. 2d 573 (1961).

## III.

It is true that the trial judge in his charge did not advise the jury of the elements constituting the crime of motor vehicle larceny, although he instructed as to the distinction between unauthorized use and receiving stolen goods which were charged in other counts in the indictments. There were, however, no requests for instructions and no exceptions to the charge and the matter is not properly before us for review. Maryland Rules 756 g and 1085. In any event, we are unable to perceive how prejudice resulted to the Appellant. It does not appear to be contended that the charge, so far as it extended, erroneously stated the law. The contention appears to be that absent an explanation of the elements constituting the crime charged in the first count, the jury was left in a state of confusion. We

find it difficult to assume that the jury was confused as to the legal effect of the words "larceny" and "stealing, taking and carrying away."

## IV.

Finally, it is urged that the arrest for the traffic violation was simply a pretext to enable the arresting officer to make the search and consequent seizure for which he otherwise lacked authority in the absence of a warrant and probable cause to believe that a felony had been committed by the Appellant.

On cross-examination Detective Ross was asked: "Did you place him (the Appellant) under arrest for possession of these motor vehicle parts that you had information on?" He replied: "To answer that, if I charged him with the parts that I was told he had, no. No, sir." He was then asked: "Did you not stop him and arrest him based on that information you had?" He answered that: "I stopped Mr. Musgrove for failing to yield the right of way of a through highway." To the next question: "How long were you looking for him?," he replied: "Approximately one month and a half." He was then asked: "That is the only reason you stopped him?," and he replied: "No, sir. Because I had an opportunity at that time to inspect the motorcycle he was riding."

The United States Supreme Court, as well as a number of other courts, has stated that an arrest may not be used as a mere excuse or pretext to search for evidence. *U. S. v. Lefkowitz*, 285 U. S. 452; *Taglavore v. U. S.*, 291 F. 2d 262; *Brinegar v. State*, 262 P. 2d 464 (Okla.); *State v. Govan*, 123 N. W. 2d 110 (N. Dakota); *State v. Richter*, 133 N. W. 2d 537 (Minn.); *White v. U. S.*, 271 F. 2d 829. See also 10 A.L.R. 3d 314. It is also well established, however, that an arrest for a misdemeanor being committed in the presence of a law enforcement officer authorizes a reasonable search of the arrestee's person and property under his control. *Harris v. U. S.*, 331 U. S. 145; *Stokes v. State*, 1 Md. App. 253, 256; *Braxton v. State*, 234 Md. 1, 6; *Jenkins v. State*, 232 Md. 529, 535; *Knotts v. State*, 237 Md. 417, 421.

In this case the evidence is that the Appellant was stopped by the officer for a traffic violation committed in the officer's presence. It was the officer's right to insure that the registra-

tion card displayed to him by the Appellant indicated that he was properly in possession of the vehicle he was driving. When it became evident that the identity of the vehicle could not be established because of the obliterated serial number on the frame and the apparent tampering with the serial number on the crankcase, the officer was within his rights in requesting the Appellant to accompany him to police headquarters in order to make a proper identification of the vehicle.

The fact that the officer had been looking for the Appellant for a period of over a month as a result of his suspicion that the Appellant had stolen a motorcycle or that the legitimate stopping of the Appellant afforded him an opportunity to inspect the vehicle does not, in our opinion, alter the legality of his action in this case.

The facts in this case are not unlike those in *Cornish v. State,* 215 Md. 64. There, the Baltimore County Police Department suspected Cornish of illegal lottery operations. They received a bulletin from the Department of Motor Vehicles that his driver's license had been revoked, which bulletin also gave a description of Cornish and the tag number of his wife's automobile which they knew he customarily drove. "Armed with all this information, two detectives in plain clothes * * * went down to Turner Station, hoping to intercept Cornish in the act of operating on a revoked license so that they could arrest him and, in the doing, perchance uncover evidence of lottery activity." When they encountered Cornish driving his wife's car, they approached him and asked for his driver's permit. As he reached into the glove compartment to obtain the permit, the officers noticed lottery slips therein. The Court held that the arrest was valid since it was for misdemeanors committed in the officers' presence; that the lottery slips were obtained as an incident to a lawful arrest and therefore were admissible.

In *Braxton v. State, supra,* two police officers in plain clothes, cruising at midnight in an unmarked car, saw a truck traveling without lights. Because of their knowledge that the area in which they observed the truck had sustained a number of burglaries, the officers became suspicious that the occupants and the truck may have been involved in a burglary. The officers had followed the truck for several blocks when the occupants stopped

it, jumped out and ran. They were pursued, overtaken by the police and returned to the truck, whereupon the officers found a large number of typewriters which they later learned had been earlier stolen from a typewriter company.

The officers conceded that their sole purpose in stopping the truck was because of their suspicion that the occupants might have been involved in a burglary; that they did not actually pursue the truck because of the traffic violation and that they did not place a traffic charge against the occupants. Nevertheless, the admissibility of the typewriters in evidence was sustained on the ground that their discovery and seizure were incident to a lawful arrest for a misdemeanor being committed in the officers' presence. See also *Jenkins v. State, supra.*

The principle of law that an arrest may not be used as a pretext to search for evidence is undoubtedly sound. Fundamental principles of law, however, are oft-times easier to state than to apply. It is apparent that the applicability of this principle must be determined in the light of the facts and circumstances of each particular case.

Under the circumstances of the case at Bar, we are of the opinion that the original stopping of the Appellant for a traffic violation was legal; that the inability of the officer to identify the vehicle justified his request that the Appellant accompany him to Police Headquarters; that having determined through the Appellant's own admission that he had altered the serial numbers, the officer properly seized the vehicle and, accordingly, it was admissible as evidence in the Appellant's trial.

*Judgment affirmed.*