261 So.2d 535 (1971)
William R. URQUHART, Appellant,
v.
STATE of Florida, Appellee.
No. 69-388.
District Court of Appeal of Florida, Second District.
July 2, 1971.
Rehearing Denied April 28, 1972.
Henry Gonzalez, Tampa, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, and Michael N. Kavouklis, Asst. Atty. Gen., Lakeland, for appellee.
LILES, Judge.
In the early morning hours of October 13, 1966, two Tampa police detectives observed appellant Urquhart and his wife leave a lounge in Tampa. Mr. and Mrs. Urquhart were in separate cars. The Urquharts had been under police surveillance for several hours, but the evidence does not show the purpose of this surveillance. The detectives followed the appellant Urquhart, and when he exceeded the speed limit by about 15 m.p.h. the officers stopped him and asked him to step out of his automobile. The policeman testified that he then detected an odor of alcohol, and arrested appellant for careless driving and drinking. Urquhart was placed in a police car and an inventory was made of the contents of his vehicle for the purpose of impounding it. The inventory uncovered certain items which led to Urquhart's arrest and conviction for a breaking and entering.
Appellant contends that the search was illegal and in violation of his constitutional rights.
We disagree. It is well established that a minor traffic violation cannot be used as a pretext to search a vehicle for evidence of other crimes. Byrd v. State, Fla. 1955, 80 So.2d 694; Riddlehoover v. State, Fla.App. 1967, 198 So.2d 651. This is not the situation in the instant case. The circuit court after hearing all the testimony found that appellant was lawfully arrested for a traffic violation. The circuit court's finding is supported by the fact that the traffic charge was pursued to the *536 end. Urquhart was stopped for a traffic violation committed in the presence of police officers. The policeman noticed an odor of alcohol and arrested the appellant. Appellant's vehicle was then inventoried so that it could be impounded. We can find nothing wrong with this procedure.
This court's decision in Godbee v. State, Fla.App. 1969, 224 So.2d 441, supports the idea that a search may be conducted for the purpose of making an inventory of the contents of an automobile, when that automobile is in the lawful possession of police officers after the owner has been placed under arrest. A very similar search occurred in Gagnon v. State, Fla.App. 1968, 212 So.2d 337. In that case the Third District also held that a search of a vehicle was not unreasonable when the search was routine inventory of a car which is being taken into custody. The Gagnon case specifically involved stopping a vehicle for traffic violations, and subsequently discovering evidence of other crimes. Also see Knight v. State, Fla.App. 1968, 212 So.2d 900, where appellant was arrested for having an improperly licensed vehicle. Inventory prior to impounding turned up a stolen jewelry box. The trial judge denied the motion to suppress the evidence, and the District Court affirmed. See also Chambers v. Maroney, 1970, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419.
For the foregoing reasons the trial court was correct and we therefore affirm.
Affirmed.
MANN, J., concurs specially.
PIERCE, C.J., dissents with opinion.
MANN, Judge (concurring).
The motive of the arresting officer does not immunize a suspected motorist from an arrest to which any of us would be subject were we seen driving as Urquhart drove. He exceeded a thirty-mile-per-hour speed limit by fifty per cent on a residential street, and this record supports the finding that his arrest was not invalid. I have treated the so-called pretextual arrest at length in State v. Holmes, Fla.App. 1971, 256 So.2d 32.
Once stopped, the aroma of alcohol justified the arrest for driving while drinking. The practice of removing to a safe place, under the control of a safe driver, every vehicle from which its drinking driver is parted by the police is sound. Once in police custody an inventory search  not an exploratory search, as in Courington v. State, Fla. 1955, 74 So.2d 652  is made reasonable by the obligation of the police to protect Urquhart's property in their possession. Though not specifically mentioned in Judge McNulty's opinion, much of the evidence seized in Godbee v. State, Fla.App.2d 1969, 224 So.2d 441, was in the trunk of the car. When the police are lawfully in possession of a vehicle and have its keys and are responsible for protecting it, it is reasonable to inventory the contents of the vehicle. This record shows that this is the invariable practice of the Tampa Police Department, and so long as that is true, the seizure is reasonable.
PIERCE, Chief Justice (dissenting).
I must respectfully dissent. The majority opinion properly holds that "a minor traffic violation cannot be used as a pretext to search a vehicle * * *" But then, in my opinion, the majority holds to the contrary on the facts of the case. I cannot reconcile the abstract principle of law with the application of that principle to the facts of the case as made by the majority.

On Rehearing
Counsel for appellant having filed in this cause a Petition for Rehearing and the same having been considered by the court, it is
Ordered that the said Petition be and the same is hereby denied.
*537 LILES, J., concurs.
MANN, J., concurs specially in denial of rehearing with opinion.
PIERCE, C.J., would grant rehearing.
MANN, Judge (concurring specially in denial of rehearing).
Our opinion in this case is so susceptible of misinterpretation by law enforcement officers that I am moved to add this caveat. I think law enforcement officers would make a grave mistake in relying excessively and unnecessarily upon inventory searches as a way around the Fourth Amendment. My concurrence is predicated upon the view that the record of this case in the trial court is adequate to sustain the finding that an inventory search was routine and reasonable.
In short, what this case represents is an appellate affirmance of a trial court's decision that as a matter of fact Tampa's routine in cases like this one warrants an inventory search of the car. We would have affirmed the opposite finding for the same reason: support in the record. It is not a holding that as a matter of law the search was reasonable under these circumstances.
This raises an interesting jurisprudential question. At some point the general pattern of law-fact relationship in a case such as this must take a predictable and routinely applicable form. But in the formative stages of a concept such as the inventory search it is to be expected that some trial judge will, after hearing different witnesses about the problems police have in getting the cars of drinking drivers off the highway, protecting the citizen's rights of privacy, minimizing the necessity for impounding property unnecessarily, simplifying the techniques for protecting the property from theft and the police from charges of loss, and so forth, come to the conclusion that some future intrusion into the trunk of a defendant's car is unreasonable. If we are dutiful we will affirm that finding too. Ultimately a pattern of fact must become a rule of law. Otherwise the rule of law which develops would be that any trial judge's notion of reasonableness is, if accompanied by an appropriate record, sustainable. That, in my view, would substitute discretion for the rule of law. We are, then, in a transitional situation with regard to the development of the law governing inventory searches. In formulating police policy, the right of the citizenry to protection against dangerous drivers is more important than the individual's right not to have his car driven or towed away, and the individual's right of privacy is superior to the power of the police to impound the car unnecessarily. Not every drinking driver should have his car towed away because one in a thousand may belong to a professional burglar. If proper priorities are kept in view, the courts and the police will ultimately know what is appropriate in this situation.
The inventory search is much discussed at the present time, and I am confident that the Supreme Court of the United States has not had its final say on the subject. See Cooper v. California, 1967, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730; Harris v. U.S., 1968, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067.
Judge McNulty's well-reasoned opinion in Godbee v. State, Fla.App.2d 1969, 224 So.2d 441, was recognized and followed by the Supreme Court of Mississippi in Jackson v. State, 1970, 243 So.2d 396. Inventory searches have also been upheld in Cabbler v. Commonwealth, 1971, 212 Va. 520, 184 S.E.2d 781; People v. Robinson, 1971, 36 A.D.2d 375, 320 N.Y.S.2d 665. See, contra, Mayfield v. U.S.D.C.App., 1971, 276 A.2d 123; Mozzetti v. Superior Court of Sacramento County, 1971, 4 Cal.3d 699, 94 Cal. Rptr. 412, 484 P.2d 84. I cannot accept the reasoning of the D.C. Court of Appeals in Mayfield v. U.S., supra, that the procedure for impounding and making an inventory of the contents of a car was reasonable but that the Fourth Amendment forbids use of the evidence disclosed. This reasoning could lead to absurd consequences.
*538 I do not intend to suggest that I would have found it reasonable to impound Urquhart's car when his residence was a short distance away but the trial judge found that the Tampa police routinely impound vehicles whose drivers have been drinking and subject these vehicles to an inventory search and that the procedure was reasonable. I am unwilling to consider as fact my hunch that there is now or could easily be developed a procedure for locking the impounded car and safeguarding the keys against its unauthorized entry, nor would I substitute my feeling that there ought to be a better way to get the car off the street for this trial judge's finding that Tampa's system is reasonable. Plainly some serious questions about the inventory search remain to be answered, and this case differs from Godbee in that the automobile was there abandoned. Some of the unanswered questions relate to the right of the owner to witness the inventory and attest to its correctness. Has an accused such a right? If so, can it be waived? What is the effect of his intoxication? Since, in the typical case, the inventory search can only be justified as a means of protecting police against the charges that property impounded by them was lost or destroyed through their fault, should the defendant be given the option of holding the police harmless against such claims as an alternative to the inventory?
I am sure that the public would be outraged if the evidence found in the trunk upon such a search as this were a dead body and a court found the search unreasonable. But as an abstract matter of law, what is found in the trunk should not have any bearing on the determination of the question whether the police had a right to impound the car and search it. That question is not yet fully explored, and before its clarification is complete some law enforcement officers may be embarrassed if they view the inventory search as a new excuse for not getting a search warrant. Cf. Courington v. State, Fla. 1954, 74 So.2d 652.