COBB, Judge.
The defendant below, James Chivers, was charged with two counts of sexual battery upon the female victim. The state appeals the trial court’s granting of a motion to suppress four items of tangible evidence taken from defendant’s pick-up truck, where one of the alleged batteries occurred. The facts adduced at the hearing on the motion revealed the following sequence of events:
Richard Griffis, deputy sheriff, testified that on May 4, 1980, he was covering the south beach area of New Smyrna Beach when he was dispatched to investigate a report of a sexual battery. Upon responding to the call, the officer talked with the female victim, who told him that she had been sexually assaulted once in a truck and twice on the beach. She gave the officer a description of her assailant as a white male wearing white jeans and she described the truck as a white truck. She told the officer that she had taken the keys to the truck and thrown them into some bushes, and that the truck was still parked at the site of the assault. The officer took the victim to the National Seashore Park, where they found a white pick-up truck which the victim immediately identified. The officer walked over to the truck, where he observed that the driver’s side window was down and the vent window on the passenger side was broken out, and saw a wallet lying on the front seat. The door of the truck was unlocked and the officer opened the door, removed the wallet, and found a driver’s license in the wallet. The name on the driver’s license was James Chivers, and the officer broadcast the name over the radio. The defendant was picked up by a Corporal Mellon further north along the beach and returned to the scene while the victim was still there. At that point, the defendant was given the driver’s license and the wallet was returned to the truck. The victim was then transported to the hospital and the defendant was taken to the police station.
Kenneth Edwards, investigator for the sheriff’s department, testified that on May 4, 1980, he was dispatched to the National Seashore Park where he met with other officers already at the scene of a white GMC pick-up truck. At that time, the defendant had already been put in custody and the victim taken to the hospital. The officer took photographs, checked the surrounding area for other possible evidence, and entered the unlocked pick-up truck and removed certain articles from the vehicle that he thought might be involved in the case. The items that he collected were a button found on the floorboard, a white towel, and a brown wallet on the front seat. After he had completed his investigation, the truck was towed away by a wrecker. At the time that the officer made his search of the truck, he did not have the defendant’s permission and he did not have a warrant. At the time of the search, the truck was parked approximately two feet from the side of a dirt roadway facing the beach. It was parked in a designated parking area by a walkway to the beach.
The defendant successfully argued to the trial court at the suppression hearing that this was not an inventory search, since it was not made pursuant to a legal seizure of a vehicle, but was a search for evidence of crime. Moreover, argued the defendant, there was no consent and no exigency to support the warrantless search by Edwards. At the time of that search, the defendant was in custody, the vehicle was immobilized because the keys had been thrown away by the victim, and there was ample opportunity to obtain a search warrant rather than conducting a warrantless search. In other words, argued the defense, no exception to the warrant requirement existed: not exigency, inventory, consent, or search incident to lawful arrest. The case primarily relied upon by the defendant before the trial court was Coolidge v. New Hampshire, 403 U.S. 433, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). The trial court suppressed as evidence the button, the towel, the wallet, and the driver’s license.
*1249 At the outset of our consideration, we agree with the defendant that the searches of the truck which produced the evidence in question cannot be sustained as inventory searches. The police officers were deliberately seeking evidence of the crime of sexual battery; they were not generally inspecting the truck and making an inventory of the contents as a consequence of impoundment in order to preserve the property or insulate themselves or other custodians from liability for its theft or destruction. South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); Fields v. State, 369 So.2d 603 (Fla. 1st DCA 1978); Urquhart v. State, 261 So.2d 535 (Fla. 2d DCA 1971), cert. denied, 266 So.2d 349 (Fla. 1972). It is also clear that there was no consent by the defendant to any search of the vehicle and the search was not incident to his arrest. The question, then, is whether or not any exigent circumstances justified a warrantless search and the resultant seizure of the suppressed items found in the truck.
We believe the trial court improperly applied the rationale of Coolidge to the instant factual situation. Coolidge, a widely-quoted and often misquoted case, stands for the proposition that for purposes of the Carroll[1] doctrine, exigent circumstances do not exist if the police have had adequate time and probable cause prior to the search to procure a warrant. In that case, the evidence against Coolidge had accumulated over a two-and-a-half-week period, and a warrant to search his automobile, which was regularly parked at his home, easily could have been obtained. In fact, a defective warrant signed not by a neutral magistrate but by the state attorney general was obtained. Thus, the state had to justify a warrantless search. The state thereupon argued that the valid arrest of Coolidge created an exigent circumstance, because he was then alerted and could have had his car removed from the home by someone else. The court rejected this argument on the basis that the police cannot create the exigency that serves as an exception to Fourth Amendment requirements by their own pri- or unreasonable action in failing to procure a valid warrant when probable cause to do so existed.
In the Carroll case, the U.S. Supreme Court established the doctrine that the police may make a warrantless search of a mobile vehicle if (1) there is probable cause to believe it contains evidence of a crime, and (2) it is likely that due to exigent circumstances the vehicle will be unavailable by the time a warrant is obtained. That doctrine was amplified by the subsequent case of Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), which involved the warrantless search of an automobile after it had been seized and removed from curbside to a police station. It was held that if the car could lawfully be searched at the time it was stopped under the exigency doctrine of Carroll, it could also be taken to the station house and lawfully searched there. The court in Chambers reasoned that there is no qualitative difference, in constitutional terms, between a search and a seizure of a car.[2] Said the court in Chambers:
Arguably, because of the preference for a magistrate’s judgment, only the immobilization of the car should be permitted until a search warrant is obtained; arguably, only the “lesser” intrusion is permissible until the magistrate authorizes the “greater.” But which is the “greater” and which the “lesser” intrusion is itself a debatable question and the answer may depend on a variety of circumstances. For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause to a magistrate and on *1250 the other hand carrying out an immediate search without a warrant. Given probable cause to search either course is reasonable under the Fourth Amendment.
In the instant case, the evidence is clear that Deputy Griffis, when he first came upon the truck with the victim, had probable cause to believe that it contained evidence of a crime and that there were exigent circumstances at that time justifying the necessity for him to search the vehicle: The identity and whereabouts of the assailant were unknown; there was the distinct possibility that a second set of keys was available to the assailant and that he would return with them (or with a tow truck); and the vehicle could have contained evidence of the crime, subject to disposition by the assailant upon his return to the truck, or even a weapon accessible to him at that time. The fact that Griffis limited his lawful initial search to discovery of the wallet and the driver’s license, and deferred further search of the truck until the arrival of Officer Edwards (analogous to the later search at the station in Chambers) did not render the search by Edwards under more favorable circumstances constitutionally unreasonable.
The trial court erred in focusing on the exigency (reasonableness) of the search by Edwards rather than that by Griffis, and thereby applying Coolidge rather than Carroll and Chambers. The difference between these landmark cases is clarified by the following language from Coolidge:
Since Carroll would not have justified a warrantless search of the Pontiac at the time Coolidge was arrested, the later search at the station house was plainly illegal, at least so far as the automobile exception is concerned ... It is true that the actual search of the automobile in Chambers was made at the police station many hours after the car had been stopped on the highway, when the car was no longer movable, any “exigent circumstances” had passed, and, for all the record shows, there was a magistrate easily available. Nonetheless, the analogy to this case is misleading. The rationale of Chambers is that given a justified initial intrusion, there is little difference between a search on the open highway and a later search at the station. Here, we deal with the prior question of whether the initial intrusion is justified. [Emphasis in original.]
Coolidge v. New Hampshire, 91 S.Ct. at 2036.
The initial intrusion without a warrant by Griffis in the instant case was justified, unlike the initial intrusion in Coolidge. Therefore, under the “continuing exigency” doctrine of Chambers, the motion to suppress should have been denied. The order of the trial court is quashed and this cause remanded for further proceedings consistent herewith.
QUASHED and REMANDED.
SHARP and COWART, JJ., concur.

. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

. Later, in United States v. Chadwick, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977) and Arkansas v. Sanders, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), the Supreme Court drew such a distinction, with dubious logic, in regard to such items as suitcases and footlockers on the basis that the expectation of privacy relating to those is greater than that relating to a motor vehicle.