**STATE of Missouri, Respondent,**

v.

**Harold R. LAMASTER, Appellant.**

**No. WD 33843.**

Missouri Court of Appeals, Western District.

May 31, 1983.

James W. Fletcher, Public Defender, Gary L. Gardner, Asst. Public Defender, Kansas City, for appellant.

John Ashcroft, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for respondent.

Before TURNAGE, P.J., and PRITCHARD and KENNEDY, JJ.

TURNAGE, Presiding Judge.

Harold R. Lamaster was found guilty by a jury of carrying a concealed weapon.

Section 571.115 RSMo 1978.[1] In accordance with the jury's verdict the court sentenced Lamaster to six months imprisonment.

Lamaster contends in a single point that the search and seizure which produced the weapon from his pocket was unlawful. Affirmed.

About 11:30 p.m. on January 19, 1981, Officer Brenda McGee was patrolling the area around 32nd and Troost in Kansas City. Officer McGee described it as being a high crime area. As the officer drove down Troost she observed a car stopped at the curb with a man standing by the open trunk and displaying clothing to a woman on the sidewalk. The officer's suspicions were aroused and she pulled in behind the parked car and turned on her car's red lights. As the officer walked toward the car she observed Lamaster get out from the drivers seat. When Lamaster started walking toward a nearby tavern Officer McGee called for him to stop, but he continued into the tavern. The woman for whom the clothing was being displayed fled, but the man who had been showing the clothing remained. Officer McGee obtained his name and learned from a computer check that he was wanted on an outstanding warrant. She radioed for a backup car and placed this man under arrest.

Another police car with three officers and a paddy wagon arrived within moments after Officer McGee's call. The man by the trunk was placed in the paddy wagon and Officer McGee and three other officers entered the tavern to look for Lamaster. They found him sitting at a table drinking a beer and asked him to step outside. Once outside the bar, Officer McGee asked Lamaster for identification and he gave a name other than Lamaster. Officer McGee then conducted a frisk of Lamaster's outer clothing and felt a hard object which she believed to be a knife in this back pocket. When she reached in his pocket she found rolled up toilet paper and a driver's license. The driver's license contained the name of Harold R. Lamaster and Officer McGee informed Lamaster that he had given her a false name and that he was under arrest for giving false information to a police officer. No further search of Lamaster occurred at that time, but his true name was checked through the police computer and Officer McGee was informed that there was an outstanding warrant for Lamaster.

After learning of the outstanding warrant, Officer McGee placed Lamaster under arrest and turned him over to Officer Duer who was driving the paddy wagon. Officer Duer placed Lamaster in a search position at the rear of the paddy wagon and attempted a full search of Lamaster. Because Lamaster kept moving around it was necessary for another officer to assist. When Officer Duer felt a hard object in the left coat pocket of Lamaster the other officer was able to remove a .22 caliber revolver. Lamaster was subsequently charged by information with carrying a concealed weapon.

Lamaster contends that his arrest for giving false information to a police officer was invalid because there is no such offense either under the ordinances of the City of Kansas City or state law. He contends that since his first arrest was invalid, the search without a warrant which followed and resulted in the discovery of the revolver cannot be held to be an incident to a lawful arrest and, thus, the revolver should have been suppressed from evidence. It is necessary to note that Lamaster does not contend that the initial stop and frisk was invalid. Indeed, under the circumstances, the stop and frisk of Lamaster was well within the holding of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Nor does Lamaster contend that he was illegally arrested on the outstanding warrant. Lamaster does contend that since he

---

1. This section was repealed in 1981. Carrying a concealed weapon is now covered by § 571.030.

was illegally arrested for a nonexistent crime, the subsequent search, even after a valid arrest, was unreasonable.

The state concedes that the initial arrest was illegal because there was no violation of the law in Lamaster's giving a false name.

The situation involving an illegal arrest followed by a legal arrest has not arisen in this state so far as research reveals. However, in *Mercer v. State,* 237 Md. 479, 206 A.2d 797 (1965), the same situation was confronted. There Mercer was stopped and informed he was under arrest, but that arrest proved to be illegal. Shortly thereafter another officer arrived and informed Mercer that he was under arrest for another crime. That arrest was legal. After the valid arrest a search was conducted of Mercer's car. The court found that the latter valid arrest supported the search. It was noted that no statement had been made or evidence seized between the first and second arrest.

In *State v. Romeo,* 43 N.J. 188, 203 A.2d 23 (1964), the same situation existed. Romeo was first arrested illegally. When the officer momentarily turned to close a door after telling Romeo he was under arrest, another officer observed Romeo reaching into his pocket and extracting papers or a packet, which he dropped or threw toward the wall. A third officer found the package and handed it to the first officer. When the officer noticed it included betting slips he ordered Romeo to empty his pockets. When the contents of his pockets and his wallet were examined they were found to contain betting slips and bookmakers' account sheets.

The court held that when Romeo discarded evidence of bookmaking the officers had reasonable cause to place him under arrest and a search was then permissible of his person. The court held that despite the formal language of the first officer when he told Romeo that he was under arrest, the action of the officer should not be legally characterized as an arrest in the usual sense, but rather considered as a justifiable temporary detention during the course of the raid of the premises where Romeo was found.

In this case Lamaster places his entire reliance on the fact that he was placed under arrest for giving false information to a police officer. Lamaster argues that everything that followed was thereby tainted because such arrest was illegal. As shown by *Mercer* and *Romeo* this initial illegal arrest does not taint a search carried out later incident to a valid arrest of the same person. Lamaster does not cite any authority for his contention and none has been found. The only cases located have held the subsequent valid arrest would authorize a search incident thereto. This court is persuaded by *Mercer* and *Romeo* and believes they were rightly decided.

Under the circumstances of this case, when no search took place until after the valid arrest, the search at that time was authorized as a search incident to a lawful arrest.

It is elementary that once Lamaster had been lawfully arrested a search could be made of his person without a warrant as an incident to the arrest. *State v. Wiley,* 522 S.W.2d 281, 289[15] (Mo. banc 1975).

The judgment is affirmed.

All concur.