STATE of Missouri, Plaintiff-Appellant,

v.

Zola BLAIR, Defendant-Respondent.

No. 66352.

Supreme Court of Missouri,
En Banc.

May 29, 1985.
Rehearing Denied June 25, 1985.

Albert A. Riederer, Pros. Atty., Robert Frager, Asst. Pros. Atty., Kansas City, for plaintiff-appellant.

Joseph Locascio, Sp. Public Defender, Kansas City, for defendant-respondent.

William L. Webster, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for Missouri Attorney General as amicus curiae.

HIGGINS, Judge.

Zola Blair, charged with murder, moved to suppress certain evidence, including her palm prints and statements made to the police, and to quash an arrest warrant. The trial court, after evidentiary hearing, sustained her motion. The State of Missouri filed an interlocutory appeal from the order of suppression pursuant to section 547.200, RSMo; the Court of Appeals, Western District, affirmed. This Court granted transfer to examine the effect, if any, of United States Supreme Court cases decided subsequent to the Western District decision. The question is whether, in the circumstances of this case, defendant's initial arrest was pretextual and rendered her subsequent detention unlawful and evidence obtained incident thereto inadmissible. This Court draws freely from the opinion written by the Honorable Jack P. Pritchard for the court of appeals and reaches the same result.

This case involves three well-known principles of law:

First and foremost is the constitutional protection of citizens from unreasonable searches and seizures by requiring the authorities to secure a search warrant based on probable cause, "describing the place to be searched, or the person or thing to be seized...." Mo. Const. art. 1, § 15; U.S. Const., amend. IV. "[A]ll warrantless searches, subject only to a few well delineated exceptions, are per se constitutionally offensive." *State v. Peterson,* 525 S.W.2d 599, 603 (Mo.App.1975).

■ Second is the case law-supported rule that upon review of a trial court's order, the facts, and reasonable inferences arising therefrom, are to be stated favorably to the order challenged on appeal. *See State v. Giffin,* 640 S.W.2d 128, 130 (Mo.1982).

■ Third is the case law-supported rule that the reviewing court is free to disregard contrary evidence and inferences, and is to affirm the trial court's ruling on a motion to suppress if the evidence is sufficient to sustain its finding. *Giffin, supra; State v. Baskerville,* 616 S.W.2d 839, 843 (Mo.1981); *State v. Rainbolt,* 676 S.W.2d 527, 528 (Mo.App.1984).

Police discovered a murder on November 24, 1981; the only evidence found was a palm print. On January 22, 1982, an informer implicated Zola Blair and her family in the murder. Comparison of the palm prints of other family members with the print found at the scene of the crime failed to produce a match; defendant's print was not in the police file. On January 23, Detective Lauffer requested that defendant be picked up for homicide but did not ask for a homicide arrest or search warrant because he believed there was not enough evidence to support a warrant. The police then learned that she was the subject of an outstanding city warrant for a traffic violation. On February 5, 1982, police arrested defendant at her home, took her to the homicide unit, booked her on a charge of homicide, and took her palm and finger prints. Later that day, she was questioned about the homicide. After the interrogation, the officer requested that her palm print be compared with that taken from the crime scene. She was detained for homicide overnight and released at 10:45 a.m. the next day. Fourteen minutes later she was booked on the municipal court parking warrant. At 12:55 p.m., she posted bond on the traffic violation and was released.

On February 8, 1982, upon learning that defendant's print matched the print found at the scene of the crime, police sought and received an arrest warrant on the homicide. She was arrested at 5:30 p.m. on that day and booked shortly thereafter. During an interrogation that began at 6:15 p.m., officers confronted her with evidence of the matching prints and obtained inculpatory statements.

For reversal the State contends that once a legal basis for an arrest exists—in this

case the outstanding traffic warrant—the subjective motives of the police become irrelevant; therefore, defendant was in lawful custody pursuant to the parking violation warrant when fingerprinted, and the prints obtained then, as well as the statements that followed, are admissible. Respondent argues that the trial court correctly found that she was not in lawful custody because the arrest was but a pretext for a search; and that the palm print and statements obtained on February 5, 1982, are inadmissible as products of an illegal detention, and the February 8th statements are also inadmissible as the "fruit" of the illegally seized palm print. Appellant counters that even if "seizure" of the palm print was illegal, this does not render the later statement inadmissible.

The United States Supreme Court recently reaffirmed its holding in *Davis v. Mississippi*, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969), that the exclusionary rule, barring admission of all evidence obtained by searches and seizures in violation of the warrant requirement, applies to investigatory detentions in general and to fingerprint evidence in particular. *Hayes v. Florida*, — U.S. —, 105 S.Ct. 1643, 84 L.Ed.2d 705 (1985). In *Hayes*, police found latent finger-prints on the doorknob of the bedroom of one of the victims of a series of burglary-rapes. Police interviewed Hayes along with other men whose general descriptions matched that of the assailant. Acting on suspicion and without a warrant, investigators went to Hayes' home with the intent to obtain his fingerprints or arrest him if necessary. *Id.* at —, 105 S.Ct. at 1644. Under threat of arrest, Hayes accompanied the officers to the station house, where he was fingerprinted. Police formally arrested Hayes after they learned that his prints matched those left at the scene of the crime. The trial court denied Hayes' motion to suppress the fingerprint evidence and he was convicted of burglary and sexual battery. The United States Supreme Court reversed the judgment, noting that "[h]ere, as in *Davis*, there was no probable cause to arrest, no consent to the journey to the police station, and no judicial authorization for such a detention for fingerprinting purposes." *Id.* at —, 105 S.Ct. at 1464. The Court held that police investigative activity triggers the "full protection" of the fourth amendment "when the police, without probable cause or a warrant, forcibly remove a person from his home or other place in which he is entitled to be and transport him to the police station, where he is detained, although briefly, for investigative purposes." *Id.*

In this case it is undisputed that the police lacked probable cause to arrest defendant on the homicide charge; to establish the legality of the warrantless search and seizure here, then, the State must show that one of the exceptions to the warrant requirement applies.

Appellant seeks to bring the challenged fingerprinting within the search incident to a lawful arrest exception to the warrant requirement. A valid custodial arrest of a suspect authorizes, without more, a search incident to the arrest. *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); *State v. Moody*, 443 S.W.2d 802 (Mo.1969). It is also true that a suspect in lawful custody is subject to fingerprinting as part of routine identification procedure. *Smith v. United States*, 324 F.2d 879 (D.C.Cir.1963), *cert. denied*, 377 U.S. 954, 84 S.Ct. 1632, 12 L.Ed.2d 498 (1964); *State v. Hunter*, 625 S.W.2d 682 (Mo.App.1981). Prerequisites to application of the foregoing are a lawful arrest, *Taglavore v. United States*, 291 F.2d 262 (9th Cir.1961), and lawful custody, *Hunter*, 625 S.W.2d at 684 ("Although a person may not be taken into custody for the purpose of fingerprinting if the police do not have a warrant or probable cause, ... once he is lawfully arrested, he is subject to a full search incident to the arrest.").

The evidence conflicts on whether the officers arrested defendant on the outstanding parking violation warrant. Officer Stewart testified that he "arrested her for an outstanding city warrant and also asked her to accompany [them] with regards to a pickup order issued by the

crimes against persons unit." He also testified that he went to her residence to take her into custody on the homicide pickup order and he did not have an arrest warrant. He advised defendant of her constitutional rights in compliance with *Miranda* although such warnings are not given on arrests for parking violations that do not involve criminal activity. Officer Stewart's partner, Officer Thomas, filed the report of the arrest under the homicide charge number as "investigation arrest-criminal homicide"; and the officers followed the procedure used for arresting and booking an individual on a homicide charge rather than that used for a traffic violation. Defendant was taken to the homicide unit at the police department's downtown station and booked there on a state charge for homicide, not for the parking violation at the district station on 63rd street. Under the normal procedure for booking a person on a municipal court parking violation, the police obtain one fingerprint of the person and allow the person to remain at the district station for four hours in order to post bond. In this case, the suspect was taken to the homicide unit where a complete set of defendant's palm and finger prints was taken, she underwent interrogation regarding the homicide, and was detained overnight. It was after all this that the police booked her on the parking violation.

The conflicts thus raised by the evidence were for the trial court to resolve. The trial court resolved them in favor of defendant, and this Court defers to the trial court's determination because it is supported in the evidence. *Baskerville,* 616 S.W.2d at 843; *Rainbolt,* 676 S.W.2d at 528. *State v. Cotterman,* 544 S.W.2d 322 (Mo.App.1976), while not involving an outstanding warrant, is pertinent. There the court rejected an attempt to rely on the search incident to the arrest exception, stating that "since there was no lawful arrest of defendant for violation of a traffic regulation it necessarily follows that there could be no search incident to a nonexistent arrest." *Id.* at 327. And in *United States v. Prim,* 698 F.2d 972 (9th Cir. 1983), where officers did have an outstanding nonsupport warrant for defendant's arrest, the court refused to accept the warrant as justification for a search and seizure based on suspicion that defendant was a drug trafficker. The court explained that the warrant, "[i]f anything, ... provides a pretext after the fact to justify the officers' actions. Such pretextual use to justify an arrest or search has been clearly recognized as violative of the fourth amendment." *Id.* at 975. *See also United States v. Millio,* 588 F.Supp. 45, 48-49 (W.D.N.Y.1984) (requiring suppression of pistol seized during detention of defendant, where scofflaw—three or more unpaid parking tickets—was used as a pretext for continuing the detention).

■ Assuming an arrest for the parking violation, the arrest, in the circumstances of this case, was at best a pretext employed to gather evidence on an unrelated homicide, and this Court cannot say, on this record, that the trial court erred in suppressing the evidence so seized. A well established limitation on the search incident to a valid arrest exception is the rule that an arrest may not be used as a pretext to search for evidence. *United States v. Lefkowitz,* 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877 (1932); *Taglavore,* 291 F.2d at 265; *State v. Goodman,* 449 S.W.2d 656 (Mo. 1970); *State v. Howell,* 543 S.W.2d 836, 838 (Mo.App.1976). *Compare Taglavore,* 291 F.2d at 265 ("[T]he *search* must be incident to the *arrest,* and not vice versa.") *with State v. Lamaster,* 652 S.W.2d 885 (Mo. App.1983) (upholding search incident to lawful arrest even though initial arrest unlawful because no search occurred until after subsequent valid arrest on outstanding warrant). In *Moody,* the court, finding no evidence of pretext, upheld an arrest and search as lawful, stating, "If the arrest for a traffic violation is used as a *pretext* for conducting the search, the proceeds of the search incident thereto will be inadmissible. The question of good faith on the part of arresting officers is capable of adjudication." 443 S.W.2d at 804.

The rule rendering evidence procured by means of a pretextual arrest inadmissible

is oft stated. None of the cases cited by the parties or found by the Court's research, however, involves precisely the circumstances of the instant case. The State relies on *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), and *Gustafson v. Florida*, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973), but the holdings in each of these cases rest on the assumption that the police executed a valid probable cause, full-custody arrest.

The State also cites cases from other jurisdictions for the proposition that where the police have a valid reason to arrest for a traffic violation and conduct a search reasonably related to the arrest, evidence seized is admissible regardless of the motives of the arresting officer. *Speake v. Grantham*, 317 F.Supp. 1253 (S.D.Miss. 1970), *aff'd*, 440 F.2d 1351 (5th Cir.1971); *Urquhart v. State*, 261 So.2d 535 (Fla.App. 1972); *State v. Holmes*, 256 So.2d 32 (Fla. App.1971); *Musgrove v. State*, 1 Md.App. 540, 232 A.2d 272 (1967); *Braxton v. State*, 234 Md. 1, 197 A.2d 841 (1964); *Shackelford v. State*, 473 P.2d 330 (Okla.Crim. 1970). Each of the cases cited is readily distinguishable as presenting a situation where the defendant commits an offense in the presence of the officers, who then immediately arrest and search incident thereto. For example, in *Holmes*, the court held that a traffic violator is not immune from the seizure of evidence of a more serious crime "provided that the gravity of the traffic offense is such that any citizen would routinely be stopped for it if seen committing the offense by a traffic officer on routine patrol." 256 So.2d at 34. *See also Urquhart*, 261 So.2d at 536 (Mann, J., concurring) ("The motive of the arresting officer does not immunize a suspected motorist from an arrest to which any of us would be subject were we seen driving as Urquhart drove."). Underlying these cases is appreciation for the far reaching consequences of allowing the common offense of a traffic violation to serve as justification for an otherwise unconstitutional search. *See Amador-Gonzalez v. United States*, 391 F.2d 308 (5th Cir.1968).

Appellant's reliance on *State v. Hunter*, 625 S.W.2d 682 (Mo.App.1981) is similarly misplaced. In *Hunter*, a federal officer, suspecting the defendant of committing forgery, consulted the local police, who arrested the defendant pursuant to outstanding municipal arrest warrants. At the police station, the federal officer questioned and fingerprinted the defendant. The trial court excluded those fingerprints because the federal officer lacked probable cause to take them at that time. The trial court, and subsequently the court of appeals, held admissible a second set of fingerprints obtained while the defendant was lawfully in custody at a later date. The language to which appellant refers, recognizing the authority of the police to fingerprint a suspect in lawful custody, relates to this second set of prints. Thus *Hunter* is dissimilar to the present case and does not aid the State's position.

 The record in this case supports the ruling of the trial court. The execution of the parking violation warrant was but a subterfuge or pretext, not pursued, to gather evidence of the unrelated crime of homicide. The palm and finger prints and statements obtained on February 5, 1982, were properly suppressed because they resulted from an unlawful arrest and search. Because the illegally seized evidence provided the sole basis for the arrest warrant for homicide of February 8, 1982, and led directly to respondent's statements on that day, the warrant and statement are also inadmissible as "fruits of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). *See State v. Hoven*, 269 N.W.2d 849, 854 (Minn.1978); *State v. Mayes*, 654 S.W.2d 926, 935 (Mo.App.1983). The contention that the challenged evidence falls within the ultimate or inevitable discovery exception to the exclusionary rule is without merit. Although *Nix v. Williams*, —— U.S. ——, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), requires less than the standard set forth in *State v. Byrne*, 595 S.W.2d 301 (Mo.App. 1979), *cert. denied*, 449 U.S. 951, 101 S.Ct. 355, 66 L.Ed.2d 215 (1980), the former still mandates that the prosecution establish

"by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means...." 104 S.Ct. at 2509. The State has not done so. Nor does the good faith exception to the fourth amendment exclusionary rule articulated in the recent cases of *United States v. Leon,* — U.S. —, 104 S.Ct. 3405, 82 L.Ed.2d 677 (U.S.1984), and *Massachusetts v. Sheppard,* — U.S. —, 104 S.Ct. 3424, 82 L.Ed.2d 737 (U.S.1984), serve to salvage the pretextual "seizure" of evidence in this case. In *Leon* and *Sheppard,* the United States Supreme Court permitted the use in the prosecution's case-in-chief of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate that later was invalidated, in *Leon* because a reviewing court found the warrant unsupported by probable cause, and in *Sheppard* because of a technical error on the part of the issuing judge. Emphasizing the deterrence rationale for the exclusionary rule, the Court reasoned that the rule cannot have any deterrent effect when the officers act upon the belief that their conduct conforms to the fourth amendment. "This is particularly true ... when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." *Leon,* 104 S.Ct. at 3420. By contrast, in the case at hand all of the evidence supports a conclusion that the officers acted in bad faith without a search warrant. *Compare Sheppard,* 104 S.Ct. at 3429 ("The officers in this case took every step that could reasonably be expected of them."). Indeed, suppression of the evidence on this record is consistent with the Supreme Court's focus on deterrence in applying the exclusionary rule. The State asks the Court to ignore the motives of the arresting officers because of the existence of the parking warrant, yet if the recent pronouncements of the United States Supreme Court have any applicability to the instant appeal, it is in their acknowledgment that courts can and will consider the question of good faith, or lack thereof, on the part of the police.

The order of the trial court sustaining the motion to suppress is affirmed, and the case is remanded for further proceedings.

BILLINGS, DONNELLY and WELLIVER, JJ., concur.

BLACKMAR, J., dissents in separate opinion filed.

RENDLEN, C.J., and GUNN, J., dissent and concur in separate dissenting opinion of BLACKMAR, J.

BLACKMAR, Judge, dissenting.

I do not believe that there is basis for finding that any substantial right of the defendant was violated on the taking of her fingerprints, and so would reverse the trial court's order suppressing the fingerprints taken at police headquarters, and the defendant's confession, and would remand the case so that the prosecution may proceed.

The case involves a willful murder in the course of a heist of furniture. The defendant, after full *Miranda* warnings, admitted her participation in November of 1981 by luring the victim to the location from which he was abducted and killed. Her statement, however, was suppressed. She remains subject to prosecution, but the unavailability of her voluntary confession certainly presents a substantial obstacle to conviction. I strongly suspect that the prosecutors will not find it practicable to proceed.

Police found a palm print on the back of the victim's van. On January 22, 1982 they received a tip that "the Blairs" had been seen carrying furniture into a house. The fingerprints of three other family members were available in law enforcement files, but none matched the palm print. The defendant's prints were not on file. There was, however, an outstanding city traffic warrant against her.

I submit that the police had not only the right but even the positive duty to obtain the defendant's fingerprints by any lawful means. The defendant could be lawfully arrested on the traffic warrant, and, hav-

ing been arrested, was subject to search just as any other arrestee would be. *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); *Gustafson v. Florida,* 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973). If the search disclosed evidence of other crimes, this evidence could be used for prosecution. *Kansas City v. McCoy,* 525 S.W.2d 336 (Mo. 1975). The search could include the taking of fingerprints for routine identification purposes. *Smith v. United States,* 324 F.2d 879 (D.C.Cir.1963), *cert. denied,* 377 U.S. 954, 84 S.Ct. 1632, 12 L.Ed.2d 498 (1964). Because of the outstanding traffic warrant the defendant had no privilege of withholding her fingerprints.

The defendant's excellent briefs set forth her essential contention in the following language:

> It is an abuse of police power and authority to lawfully arrest an individual for a parking warrant so that, as an incident to that arrest, they may search for and seize evidence on an exploratory basis while investigating a totally unrelated offense ...

This proposition is unsound, and is supported by no controlling authority. If the defendant is lawfully arrested the police have the right to exercise the power incident to lawful arrest. The defendant has no standing to complain simply because she was specially selected from among those subject to arrest on traffic warrants. Nor may she complain that her palm print was taken, while only one fingerprint is customarily taken from other traffic arrestees. The extent of the fingerprint identification taken is a matter for police discretion.

The principal opinion places great store in the order of events following the defendant's arrest. I submit that the events between the time she was taken into custody on the afternoon of February 5, and the time she was released on bond on the after-

noon of February 6, should be considered a single transaction. At the time of her release the police had her fingerprints. They were entitled to take them. They did not have any incriminating statement from her. After receiving *Miranda* warnings, she denied participation. The police had no more than they could have had if she had been arrested on the traffic warrant alone.

The principal opinion holds that there is a fact issue as to whether the defendant's arrest on February 5, 1982 was on a traffic warrant, as the arresting officer testified to, or on homicide charges, as is stated in the police report. It is then submitted that the trial judge had the right to resolve the conflicts in the evidence, and that, although he gave no reason for his ruling, his decision must be affirmed if it can be sustained on any basis.[1] Although I am not fully satisfied as to the standard of review, I am prepared to argue for present purposes to apply the rule of *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). The decision is legally erroneous under this standard.

There is a substantial problem when the trial judge does not indicate the basis for a decision. I do not believe that we should have to strain to find some conceivable factual basis on which the trial court might have acted. The reasonable assumption is that the trial judge responded to the issues raised by the prevailing party, and agreed with the defendant's contention that an arrest could not be made on the traffic warrant for the purpose of obtaining fingerprints. Inasmuch as I do not accept the argument, I would reverse the ruling.

Uncontradicted evidence shows that the police were fully aware of the traffic warrant at the time of the February 5 arrest.[2] The defendant was booked on the traffic warrant on the morning of February 6, and held in custody until she could make bond. Had she been again fingerprinted after the booking on the traffic warrant, the fingerprinting would be valid. But it would be

1. It is of interest that the challenged ruling was made by Judge Coburn on the basis of a transcript of evidence heard by Judge Levitt.

2. The arresting officer testified that he arrested her for an outstanding city warrant and also asked her to accompany us with regards to a pickup order issued by the crimes against persons unit.

absurd to require the police to again take her fingerprints, when they had taken them only a few hours before. The fingerprinting thus violated no substantial right of hers.

Inasmuch as there was basis for a lawful arrest, the order of proceedings should make no difference. The time of booking on the traffic warrant is an immaterial circumstance. It would be ludicrous to suggest that suppression must be ordered because the police did not retake her fingerprints after she was booked on the traffic warrant.

*Davis v. Mississippi,* 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969), now reinforced by *Hayes v. Florida,* — U.S. —, 105 S.Ct. 1643, 84 L.Ed.2d 705 (1985), stands for the proposition that a citizen whose fingerprints are not otherwise available to the police may not be subjected to investigatory fingerprinting in the absence of probable cause for arrest. These cases are completely distinguishable for the reason that this defendant was subject to arrest. Her fingerprints were available, just as were prints already in the police files or those of people arrested for subsequent traffic violations. *Hayes* by its terms applies only to detention after the crime when fingerprinting is the sole object.

The holding is all the more unfortunate because it suppresses a voluntary confession, after proper *Miranda* warnings, under the "fruit of the poisoned tree" doctrine of *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The confession was taken only after the defendant was arrested a second time, under a homicide warrant issued on probable cause because of the fingerprint correspondence. The principal opinion holds that the tree is poisoned because, without the palm prints, there would be no probable cause for arrest. Inasmuch as the prints were properly available, the poisoned tree doctrine is inappropriately applied. If the reason for the suppression is the order of events on the first arrest the holding represents a particularly unfortunate instance in which "the criminal is to go free because

the constable has blundered." *People v. DeFore,* 242 N.Y. 13, 21, 150 N.E. 585, 587 (1926), Cardozo, Ch. J.

I agree with the principal opinion that we must depend on the trial judge for the resolution of most pretrial matters regarding the admissibility of evidence when challenged because of claim of constitutional privilege. It is the sense of § 547.200, RSMo Supp.1984, however, that orders of suppression be reviewable on appeal, and I sense a definite feeling on the part of the legislature that admissible evidence should be suppressed only for substantial cause. Busy trial judges seldom have the opportunity to make detailed findings. The facts before the trial court were not substantially in dispute. It must be assumed that the judge accepted the defendant's contentions, as set out above and advanced. To me the question is whether a substantial privilege of the defendant's was violated. I find no legal basis for saying that it was.

The cases cited by the majority for the proposition that an arrest may not be used as a pretext for a search are distinguishable, and not helpful in solving the problem before us. In *United States v. Lefkowitz,* 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877 (1932), the court found that, while the arrest was pretextual, the items seized by the search "could not lawfully be searched for and taken even under a search warrant issued upon ample evidence." In *Taglavore v. United States,* 291 F.2d 262 (9th Cir.1961), a police officer claimed to have seen the defendant commit two minor traffic violations the day before the search. He then swore out a traffic warrant and an arrest and search were made. There was no outstanding traffic warrant. The court may well have disbelieved the officer's claim.

The Missouri cases cited, *State v. Goodman,* 449 S.W.2d 656 (Mo.1970), and *State v. Howell,* 543 S.W.2d 836 (Mo.App.1976), involved arrests without probable cause. In *Goodman,* two men were arrested while walking down the side of a highway. The only reason for the arrest was because the men were strangers in a small town. Evi-

dence seized incident to the arrest was suppressed. In *Howell*, a murder suspect was arrested while walking down a street. The only evidence of his involvement in the crime was that he had been seen talking to the defendant two days earlier. Because there was no probable cause for the arrest, evidence seized incident to the arrest was suppressed.

The common theme of the pretext cases is that the police arrested people without reason. The police had a valid pre-existing warrant for Zola Blair's arrest. Any procedural irregularities which occurred afterward should not invalidate the arrest. *Cf. State v. Lamaster*, 652 S.W.2d 885 (Mo. App.1983), holding that a later valid arrest was not tainted by a shortly earlier arrest for an improper reason.

I agree that the "good faith" cases of *United States v. Leon*, — U.S. —, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) and *Massachusetts v. Shepherd*, — U.S. —, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984) are not directly on point, but find them to be indicative of a trend of limiting the operation of the exclusionary rule to cases of deprivation of substantial rights. The rule is designed not as an obstacle course for the police, but as a protection to the citizenry against invasion of privileged territory. It should not be applied to Zola Blair's fingerprints, which are not in the privileged area.

*Nix v. Williams*, — U.S. —, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984) I find much more in point. There the court gave precedence to substance over form in holding that the fruits of an illegal custodial interrogation (a dead body) would not be suppressed, because normal degenerative processes would have betrayed the body's presence at some point. I do not argue that the defendant's fingerprints would have been discovered inevitably, but simply contend that they were available to the police during the defendant's initial detention and therefore not tainted by questioning and detention for a homicide investigation.

The order of suppression should be reversed and the case remanded for further proceedings.